[No. G030846. Fourth Dist., Div. Three. Feb. 27, 2004.]

GERALD D. LUNDAHL, Plaintiff and Appellant, v.
RUTH M. TELFORD, Defendant and Respondent;
ORANGE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Intervener and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of parts II A., II B., and II D.

**COUNSEL**

Family Law Appellate Associates and Jeffrey W. Doeringer for Plaintiff and Appellant.

Ruth M. Lundahl, in pro. per., for Defendant and Respondent.

Bill Lockyer, Attorney General, James M, Humes, Assistant Attorney General, Frank S. Furtek and Mary Dahlberg, Deputy Attorneys General, for Intervener and Respondent.

Barry J. Brooks as Amicus Curiae, upon the request of the Court of Appeal on behalf of Repondent.

## OPINION

**ARONSON, J.**—Gerald Lundahl contends the trial court erred in denying his petition to vacate registration of several Utah spousal support orders in favor of his former wife, Ruth Telford. Lundahl argues the five Utah orders, issued between 1991 and 1999, are void for lack of subject matter jurisdiction because the parties' 1977 dissolution of marriage in California invested California with exclusive jurisdiction over spousal support. We disagree and affirm. In doing so, we revisit well-established provisions of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) permitting concurrent support orders in different jurisdictions for differing amounts. We consider whether RURESA's replacement, the Uniform Interstate Family Support Act (UIFSA), codified at Family Code section 4900 et seq.,[1] establishes a mechanism for settling upon a single order as controlling among multiple *spousal* support orders, as opposed to child support orders. Under UIFSA's express terms, we conclude there is no provision for a single controlling spousal support order.

### I

### FACTS AND PROCEDURAL BACKGROUND

Lundahl and Telford were married in Utah in 1952. They later moved to Los Angeles. After 25 years of marriage and 12 children, Lundahl and Telford dissolved their marriage in 1977. The judgment of dissolution, issued by the Los Angeles family court, set child support at $1,600 per month and spousal support at $600 per month. A paragraph in the decree labeled *"Reservation of Jurisdiction"* stated: "The court reserves jurisdiction of the above-entitled matter and as to all such issues as may be necessary to effect the purposes and intent of this order." The decree awarded Telford custody of the minor children and she returned to Utah. The next year, Lundahl alleged problems had developed with his visitation rights. He filed an action in the Utah courts, and the visitation issue was apparently resolved.[2]

---

[1] All further statutory references are to this code, unless otherwise specified.

[2] Throughout the ensuing years, it seems numerous proceedings took place in Utah, resulting in stipulations by the parties and court orders. The parties allude to these proceedings but,

In 1987, Lundahl renewed litigation in Los Angeles. The matter was transferred to Orange County. On August 24, 1987, the Orange County court set child support at $1,800 per month for four children until the eldest emancipated, then $1,500 for three children until the next eldest emancipated, then $1,200 per month for two children until one emancipated, and finally $600 per month until the youngest emancipated. The court set spousal support at $1,000 per month until the eldest child emancipated, whereupon it would increase to $1,050 until the youngest child emancipated, and then continue at $1,250 until the death of either party or remarriage of Telford.

In 1989, on Lundahl's motion, the Orange County court modified custody by awarding him physical custody of one of the parties' minor children. Telford did not appear.

In 1991, seeking enforcement of child and spousal support, Telford filed in Utah the first of several petitions that are the subject of this appeal. Lundahl did not appear at a hearing on the court's order to show cause on April 24, 1991. The court found Lundahl had ceased paying $3,000 a month in "family" support and ordered him to resume paying that amount. Lundahl appeared at the next hearing on August 29, 1991, and the court set arrears at $3,500. Neither the $3,000 monthly "family" support amount, nor the $3,500 arrears amount were broken down into separate amounts for child and spousal support.

Lundahl again visited the Orange County courthouse in 1993, seeking custody of the parties' only remaining minor child. The court granted Lundahl's custody request and terminated his child support obligation. Telford did not appear.

The same year, a judgment in the Utah court established arrears at $29,200 through February 1993. Lundahl appeared at this hearing. In his written brief, he argued the court had no jurisdiction over "support arrearages and in fact California has jurisdiction over this matter." But the court expressly concluded it had jurisdiction. The $29,200 in arrears ordered by the court was a lump sum; it did not distinguish between child and spousal support.

In November 1994, Lundahl sought a reduction of spousal support in Orange County. Telford testified and the matter was continued. She failed to appear at the next hearing, and spousal support was reduced to $500 per month, beginning July 1994. Lundahl asserts this is the controlling amount.

---

except for the orders we discuss below that are the subject of this appeal, it appears no other Utah proceedings were before the trial court or figured in its registration decision. Lundahl elected to bring up the trial court record by way of appendices instead of clerk's transcripts (Cal. Rules of Court, rule 5.1.), so he has only himself to blame for any record omissions.

In January 1995, Lundahl entered into a stipulation with the Riverside County District Attorney's Office. He agreed his "child support and/or arrears" from August 1991 through December 1994 were $31,498.18, and consented to pay $1,852.83 per month towards these arrears. The stipulation, filed in the Riverside County Superior Court, expressly included the $500 per month due under the 1994 Orange County spousal support order, but did not specify whether any other portion of the "arrears" was for accrued spousal support or only for delinquent child support.[3]

In April 1995, on Telford's petition, the Utah court set spousal support at $2,235 per month and arrears at $62,100, plus attorney fees of $5,200. Lundahl did not appear at the hearing on the petition. The court's order noted the $62,100 arrearage was "based upon the temporary alimony and child support award of $3,000.00 per month, adjusted by deducting the sum of $300.00 of said amount representing the amount of child support and multiplying the remainder of $2,700.00 by the months which have passed since the last judgment, the plaintiff having paid nothing since that time."

Telford then attempted to set aside the Orange County court's 1994 spousal support order. In a motion to vacate the order, she claimed misinformation from Lundahl's counsel caused her to skip the hearing at which spousal support was reduced to $500. The court rejected her claim of extrinsic fraud or mistake, concluding she "was in court on the 18th, she knew of the continued date, she may have misunderstood, I'll give her the benefit, [but] I don't think there is any . . . extrinsic fraud, or any showing here that she was denied her right to appear . . . ." (*In re Marriage of Lundahl* (Aug. 26, 1997, G019679) [nonpub. opn.] p. 4.) On appeal, Telford changed tactics and asserted for the first time the trial court "was without in personam or in rem jurisdiction . . . because she made a special appearance . . . and there was no other basis on which the court could assume jurisdiction." (*Ibid.*) We concluded Telford waived the argument, and further noted the record did not establish a special appearance and that, even if it had, "the court, pursuant to the dissolution judgment, maintained jurisdiction over the parties and spousal support." (*Id.* at p. 5.)

In February 1999, after a hearing in Utah at which Lundahl again failed to appear, the Utah court entered an order establishing "back alimony" at $62,991.72, plus interest, as well as $500 in attorney fees. The court's order did not specify the period covered by the $62,991.72 figure.

On October 24, 2001, the Family Support Division of the Orange County District Attorney's Office registered the two 1991 Utah orders and the 1993,

---

[3] Telford did not sign the stipulation and she insists the district attorney's office could not waive her right to arrears, a point we need not reach on this appeal since the trial court deferred calculation of arrears, as we discuss below.

1995, and 1999 Utah orders for enforcement in California. Lundahl subsequently moved to vacate registration on five grounds: (1) the Utah court lacked personal jurisdiction over him; (2) the Utah support orders had been vacated, suspended, or modified by a later order; (3) the amount of arrears was incorrect; (4) some or all of the arrears were not enforceable; and (5) laches. In an amended order entered on September 27, 2002, the trial court concluded Lundahl presented insufficient evidence to vacate registration on any of these grounds. On Lundahl's claim that the Utah orders were void for lack of subject matter jurisdiction, the court specifically found: "The Utah Court had jurisdiction to make the orders because there was concurrent jurisdiction in both Utah and California." The court confirmed registration of each of the Utah orders and ordered "all stays on enforcement lifted."

The court "reserve[d] on the issue of the amount of arrears owed" and a hearing was eventually scheduled for several months later. In an abundance of caution, Lundahl appealed the trial court's denial of his petition to vacate registration of the Utah orders, and also sought a writ of supercedeas to stay enforcement of the registered orders. We denied the petition seeking writ relief. Meanwhile, in its ruling denying Lundahl's petition to vacate registration, the trial court had ordered "the District Attorney's Office to use its best efforts to prepare an accounting of arrears" and mail it to the parties. On being apprised of Lundahl's appeal, the trial court deferred the accounting pending our decision in this matter.

## II

## DISCUSSION

### A.–B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Jurisdictional Claims*

Lundahl's sole contention on appeal is that the Utah orders were void for lack of subject matter jurisdiction because the parties' 1977 dissolution in California invested California with exclusive jurisdiction over spousal support. He argues the Utah orders were thus unenforceable and the court erred by not vacating registration. Section 4956, subdivision (a)(5), requires registration of a support order to be vacated where a defense to enforcement exists under state law. " ' "A void judgment or order is, in legal effect, no judgment," ' " and cannot be enforced. (*Rochin v. Pat Johnson Manufacturing*

---

*See footnote, *ante*, page 305.

*Co.* (1998) 67 Cal.App.4th 1228, 1240 [79 Cal.Rptr.2d 719]; cf. Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1710.40, p. 694 ["Common defenses to enforcement of a sister state judgment include . . . [that] the judgment was rendered in excess of jurisdiction"].) Whether California had sole subject matter jurisdiction over spousal support is a question of law that we review de novo. (See *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774 [28 Cal.Rptr.2d 190] [subject matter jurisdiction is a matter of law].)

### 1. No Reservation of Exclusive Jurisdiction

■ The terms of the 1977 California judgment of dissolution do not support Lundahl's claim it vested the state with exclusive jurisdiction over spousal support. Lundahl seizes upon the final paragraph of the judgment of dissolution, labeled *"Reservation of Jurisdiction"* which states: "The court reserves jurisdiction of the above-entitled matter and as to all such issues as may be necessary to effect the purposes and intent of this order." The word "exclusive" is simply not present in this language. We may not insert terms into a document that are not there (Code Civ. Proc., § 1858), and a fortiori, nor may a party. Lundahl also relies on our 1997 opinion in the prior appeal between the parties in which we concluded "the [trial] court, pursuant to the dissolution judgment, maintained jurisdiction over the parties and spousal support." But the issue there was whether the trial court had jurisdiction, not whether its jurisdiction was exclusive. Because the issue was not raised, our opinion did not decide that jurisdiction in California precluded jurisdiction in Utah. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 943 [55 Cal.Rptr.2d 724, 920 P.2d 669] ["[c]ases are not authority, of course, for issues not raised or resolved"].)

### 2. No Exclusive Jurisdiction Under RURESA

■ Lundahl's argument under RURESA is similarly without merit. He contends: "Under RURESA, the Utah orders are surplusage and do not and cannot create greater liabilities than that imposed by the California dissolution court." RURESA was in effect in California at the time of the 1977 dissolution through the 1994 order reducing spousal support to $500 a month. [5] It also covered the 1991, 1993, and 1995 Utah orders, but not the

---

[5] California adopted RURESA in 1968 (see *Scott v. Superior Court* (1984) 156 Cal.App.3d 577, 584 [202 Cal.Rptr. 920]), and in 1994 recodified it under the Family Code without substantive change. (See *In re Marriage of Chester* (1995) 37 Cal.App.4th 1624, 1630 & fn. 4 [44 Cal.Rptr.2d 717].) In 1998, California repealed RURESA and UIFSA became effective. (Stats. 1997, ch. 194, § 2, codified at Fam. Code, §§ 4900 to 4976.)

1999 Utah arreages order, which we discuss separately below. [6] Contrary to Lundahl's assertion, both Utah and California expressly recognize that RURESA sister states may issue independent support orders for differing amounts without having modified, superceded, or nullified each other's orders. (See, e.g., *Kammersell v. Kammersell* (Utah 1990) 792 P.2d 496, 498; *In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 521 [160 Cal.Rptr. 379].) Thus, an obligor spouse was confronted with the very real possibility of "multiple and perhaps inconsistent orders enforceable against him." (*In re Marriage of Straeck* (1984) 156 Cal.App.3d 617, 624 [203 Cal.Rptr. 69].) The court in *Straeck* concluded, "While sympathetic to an obligor placed in this dilemma, our reply is that RURESA contemplates and allows this result." (*Ibid.*; accord, *Kammersell v. Kammersell, supra*, 792 P.2d at p. 498 ["This is currently the view of a majority of jurisdictions that have adopted URESA or RURESA"].)

This view was grounded in section 31 of RURESA and section 30 of the former uniform act, URESA. As described in detail by an annotation, "Section 30 of [URESA] provided that 'no order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.' In [RURESA], the substance of § 30 of [URESA] was transferred, with slight modification, to § 31, which states that 'a support order made by a court of this state pursuant to this Act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar Act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.' " (Annot., Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supersede or Nullify Any Other Order (1984) 31 A.L.R.4th 347, 351–352 (Annotation).)

Notably, RURESA did not distinguish between child support orders and spousal support orders. (See UIFSA Com., 29D West's Ann. Fam. Code (2004 supp.) foll. § 4914, pp. 307–308 [under UIFSA, "[a]n order for spousal support is treated differently than an order for child support. . . . This marks a radical departure from RURESA, which treated spousal and child support

---

[6] Utah adopted RURESA in 1980. (Utah Laws 1980, ch. 15, § 2.) RURESA remained in effect until UIFSA was substituted in 1997. (Utah Laws 1996, ch. 149, § 2; see also Utah Laws 1997, ch. 232, renumbering UIFSA codification at Utah Code from § 78-45f-100 to § 78-45f-901.)

orders identically"].) Hence, the principles articulated for RURESA child support orders apply equally to spousal support orders. In particular, a court "is not prevented from entering a child support order different from that previously ordered, on the basis that such an award is effective prospectively only, and thus the court is not nullifying or superseding the prior order within the meaning of the provision . . . . In such cases, the courts have reasoned that proceedings under the Act are de novo, in that the responding court has the authority to make an independent determination regarding the duty of support based on presently existing conditions, that the remedies under the Act are in addition to and not in substitution for any other remedies, and that the Act contemplates that more than one order of support may be outstanding at any given time for the same obligation." (Annotation, *supra*, 31 A.L.R.4th at p. 352, fns. deleted.)

Concisely stated, under RURESA: "[N]ew support orders do not nullify, modify, or supersede the original support decree, but instead provide an additional, supplementary or cumulative remedy. [Citations.] Amounts paid under one support order are credited against amounts accruing or accrued for the same period under another support order. This latter language necessarily contemplates that two or more support orders may be outstanding and valid at the same time. [Citations.] Thus, 'the authority of the court originally ordering payment is not affected nor is its order modified by an order of the court of the responding state fixing another or different sum.' [Citation.]" (*Thompson v. Thompson* (S.D. 1985) 366 N.W.2d 845, 847–848.)

■ This result "oftentimes works to the detriment of the obligor, usually the husband, since even if the responding court in a URESA [or RURESA] proceeding prospectively reduces the amount of support owed, he may still be obligated for the full amount of support as determined by the original child support order . . . , although under the antinullification provision of the Act, he will get credit for any amounts paid pursuant to an order made under the Act." (Annotation, *supra*, 31 A.L.R.4th at p. 354; accord, *Oglesby v. Oglesby* (1973) 29 Utah2d 419 [510 P.2d 1106, 1107–1108] [reduction of support by Washington court did not relieve husband of higher obligation owed under earlier Utah divorce decree].) Because RURESA contemplates that "more than one order of support may be outstanding at any given time for the same obligation" (Annotation, *supra*, 31 A.L.R.4th at p. 352), Lundahl's argument that the California judgment of dissolution was controlling, and that the subsequent Utah support orders were void under RURESA, is simply wrong.

*3. UIFSA Does Not Determine Controlling Order for Spousal Support*

■ Switching tacks, Lundahl next argues that under new provisions in UIFSA, which superceded RURESA in Utah in 1997 and in California in

1998, California family courts retained "continuing, exclusive jurisdiction" over spousal support. Lundahl misreads UIFSA. True, UIFSA "was developed to improve the two prior uniform laws concerning enforcement of family support orders, URESA and the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). [Citation.]" (*Child Support Enforcement Div. of Alaska v. Brenckle* (1997) 424 Mass. 214 [675 N.E.2d 390, 392].) And "UIFSA aims to cure the problem of conflicting support orders entered by multiple courts, and provides for the exercise of continuing, exclusive jurisdiction by one tribunal over support orders. [Citation.]" (*Ibid.* [construing UIFSA in context of child support enforcement action].) But as we discuss below, UIFSA's mechanism for establishing a "controlling order" applies only to multiple *child* support orders. (See Sampson, *Uniform Interstate Family Support Act* (*With Unofficial Annotations*) (1993) 27 Fam. L.Q. 93, 121 n. 69 [UIFSA's "avoidance of interstate modification of alimony decrees reflects, at least in part, the disinterest in the topic of the Drafting Committee and its co-reporters, advisors and observers. Throughout the revision process the focus of all concerned was almost entirely on child support"]; cf. Hatamyar, *Critical Applications and Proposals for Improvement of the Uniform Interstate Family Support Act and the Full Faith and Credit for Child Support Orders Act* (1997) 71 St. John's L.Rev. 1, 22 ["The drafters apparently crafted UIFSA's rules concerning simultaneous proceedings in two states with child support, not spousal support, in mind"].)

Lundahl seizes on the fact that, for both child support orders *and* spousal support orders, UIFSA provides for "continuing, exclusive jurisdiction" in the court issuing the order. (§ 4909, subd. (a) [regarding child support orders]; § 4909, subd. (f) [regarding spousal support orders].) Section 4909, subdivision (f), states in relevant part, "A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a spousal support order throughout the existence of the support obligation." But as courts have recognized, there can be under UIFSA— however paradoxical—multiple sister state tribunals having "continuing, exclusive jurisdiction." (See, e.g., *In re Parenzan* (2001) 285 A.D.2d 59 [727 N.Y.S.2d 163, 168] [when more than one state has issued a support order, "UIFSA acknowledges that more than one tribunal could have continuing, exclusive jurisdiction under UIFSA"]; see also § 4911, subd. (b)(2) [describing procedure for settling on a "controlling" *child* support order when "more than one of the tribunals would have continuing, exclusive jurisdiction under this chapter"].)

The official comment to the definition section of UIFSA, codified at section 4901, is instructive: "Until valid orders issued under [URESA and RURESA] expire of their own terms or are replaced by new UIFSA orders, the support orders themselves will continue to have vitality . . . In short, UIFSA is

specifically designed to function with the earlier acts without conflict. Support orders issued under one of the earlier acts should be honored and enforced in every State. . . . States are directed to accord full enforcement remedies to support orders issued under the prior acts, but they must apply UIFSA restraint regarding modification. In situations involving multiple orders created under the former system, UIFSA mandates the application of its one-order rules to determine the single order that is entitled to prospective enforcement, *see* Section 207 [Fam. Code, § 4911], *infra*." (UIFSA Com., 29D West's Ann. Fam. Code (2004 supp.) foll. § 4901, p. 285; see generally *Smith v. Superior Court* (1977) 68 Cal.App.3d 457, 463 [137 Cal.Rptr. 348] [commissioners' comments entitled to " ' "substantial weight in construing the statutes" ' "].)

Section 207 of UIFSA, entitled "Recognition of controlling child-support order," as codified in section 4911, describes the procedure for settling on a "controlling" order when two or more *child* support orders exist. Subdivision (b) of section 4911 provides: "If a proceeding is brought under this chapter, and two or more *child* support orders have been issued by tribunals of this state or another state with regard to the same obligor and child, a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction: [¶] (1) If only one of the tribunals would have continuing, exclusive jurisdiction under this chapter, the order of that tribunal controls and shall be so recognized. [¶] (2) *If more than one of the tribunals would have continuing, exclusive jurisdiction under this chapter, an order issued by a tribunal in the current home state of the child controls and shall be so recognized, but if an order has not been issued in the current home state of the child, the order most recently issued controls and shall be so recognized.* [¶] ·(3) If none of the tribunals would have continuing, exclusive jurisdiction under this chapter, the tribunal of this state having jurisdiction over the parties shall issue a *child* support order, which controls and shall be so recognized." (Italics added.) The controlling order is prospective only (§ 4909, subd. (c)), so sections 4913 and 4913.5 provide for credit of payments on one or more past support orders against obligations owed on other orders.

The drafters explained the intended effect of sections 4911, 4913, and 4913.5 as follows: "Sections 207 [§ 4911] and 209–210 [§§ 4913–4913.5] are designed to span the gulf between the one-order system created by UIFSA and the multiple-order system previously in place under RURESA and URESA. UIFSA necessarily must provide transitional procedures for the eventual elimination of existing multiple support orders in an expeditious and efficient manner. But, even though all U.S. jurisdictions enacted UIFSA by 1998, many years will pass before its one-order system will be completely in place. Multiple orders covering the same parties and child number in the hundreds of thousands; it can be reasonably anticipated that some of these

orders will continue in effect until nearly 2020. To begin the journey toward a one-order system, however, this section provides a relatively simple procedure designed to identify a single viable order that will be entitled to prospective enforcement in every UIFSA State." (UIFSA Com., 29D West's Ann. Fam. Code, *supra*, foll. § 4911, p. 302.) To be sure, the comment speaks broadly of a "single viable order," but that language must be read in the context of the section commented upon—section 4911. By its terms section 4911 resolves the multiple order systems of URESA and RURESA into a one-order system only for child support, not spousal support.

The adoption of UIFSA has narrowed the options for obligors like Lundahl. Under URESA and RURESA, new support orders in a sister state were deemed to be a cumulative remedy, *not* a modification of the original order. But these statutes also provided for modification of a court order from a sister state, if the modification was litigated and noted explicitly on the new order. (*In re Marriage of Straeck, supra*, 156 Cal.App.3d at p. 625 ["the obligor could request that the court specifically provide that the new order supersedes or modifies all other orders"]; accord, *In re Marriage of Ward* (1994) 29 Cal.App.4th 1452, 1456 [35 Cal.Rptr.2d 32].) An obligor could thus gain protection against multiple orders by securing a statement of express modification in the new order.[7]

But UIFSA now permits modification of a spousal support order only by the court issuing the order. Section 4909, subdivision (f), states: "A tribunal of this state may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state." As such, "the CEJ [Continuing, Exclusive

---

[7] This provision in URESA and RURESA for express modification distinguishes the litany of inapposite Utah cases relied upon by Lundahl. In *Bankler v. Bankler* (Utah Ct. App. 1998) 963 P.2d 797, 800, the court stated: "Actions to modify a divorce decree should 'properly be brought in the forum which issued the decree.' [Citation.] '[T]he court issuing the original decree retains exclusive jurisdiction to modify its decrees. Parties wishing to modify a decree must do so *in the original forum.*' " But in *Bankler*, the issue was domestication of a sister state divorce decree under the Utah Foreign Judgment Act, not express modification of the decree under RURESA or entry of an independent support order as permitted by the act. (Cf. *Angell v. Sixth Judicial District Court* (Utah 1982) 656 P.2d 405, 407 [contemplating an action "brought to modify a foreign decree" as "an original action in this State"].) Similarly, *Rimensburger v. Rimensburger* (Utah Ct. App. 1992) 841 P.2d 709, 711, did not involve modification of an another state court's judgment under RURESA, but rather modification by one Utah court of a divorce decree issued by another Utah court, long prohibited by Utah venue precedent. And *Christensen v. Christensen* (1925) 65 Utah 597 [239 P. 501, 503], in which the court held, "an application like the one in question here [intrastate support modification] should be made in the original divorce action and not by an independent proceeding," predated RURESA by decades. Again, "[c]ases are not authority, of course, for issues not raised or resolved." (*San Diego Gas & Electric Co. v. Superior Court, supra*, 13 Cal.4th at p. 943; accord, *Salt Lake Inv. Co. v. Oregon Short Line R. Co.* (1914) 46 Utah 203 [148 P. 439, 444].)

Jurisdiction] of the issuing State over a spousal support order is permanent . . . ." (UIFSA Com., 29D West's Ann. Fam. Code, *supra*, foll. § 4909, p. 297.) The UIFSA drafters explain: "Under UIFSA, 'interstate' modification of spousal support is limited to a procedure whereby a proceeding may be initiated outside of the issuing State, but only the tribunal in the original issuing State may modify the order under its law. This approach was expected to have minimal effect on actual practice, a prediction that appears to have been accurate. Interstate modification of pure spousal support was relatively rare under RURESA, and plays almost no part in the activities of support enforcement agencies." (*Id.*, foll. § 4914, p. 308.)

Of course, "[i]nterstate *modification* of pure spousal support was relatively rare under RURESA" (italics added) precisely because additional support amounts were considered part of the obligee's cumulative remedy, and not a "modification" unless explicitly so designated. Obligors like Lundahl subject to multiple spousal support orders no longer are able to request modification of an out-of-state support order in their home forum. Under UIFSA, Lundahl must appear in Utah if he desires to modify the Utah court's spousal support orders. He may not do so in California. (*In re Marriage of Rassier* (2002) 96 Cal.App.4th 1431 [118 Cal.Rptr.2d 113] [under UIFSA, California obligor must go to Florida to modify Florida order]; accord, *Dep't of Human Services v. Jacoby* (Utah Ct. App. 1999) 975 P.2d 939, 945–946 ["In this case, a Virginia court issued the spousal support order and therefore, the order could not be modified by the trial court in Utah"].)

■ In sum, obligors who failed to appear in a support action in another state under URESA or RURESA risked multiple spousal support obligations for which UIFSA provides no remedy. And while UIFSA worsens Lundahl's dilemma because in-state modification is no longer available, he has only himself to blame for not appearing in the Utah actions in which additional support was ordered. (See *In re Marriage of Straeck*, *supra*, 156 Cal.App.3d at p. 624.) Of course, he is entitled to credit towards both his Utah and California obligations for payments made on either. (§ 4913.)

Before concluding, we return to the 1999 Utah spousal support order, issued after Utah adopted UIFSA in 1997. The order does not purport to be a modification of any earlier order, but merely records the sum of arrearages Lundahl owed as of that date under the support amount fixed by the 1995 Utah order. The 1999 order in no way contravenes UIFSA. Rather, the order is fully consistent with UIFSA as an example of the Utah court's "continuing, exclusive jurisdiction" over its own prior support orders.

D. *Pending Utah Court Proceedings**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

## DISPOSITION

Because neither the parties' 1977 California judgment of dissolution, nor RURESA or UIFSA support Lundahl's argument the California courts were vested with exclusive spousal support jurisdiction, the trial court's order confirming registration of the Utah support orders is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, rule 27.)

Bedsworth, Acting P. J., and Fybel, J., concurred.

A petition for a rehearing was denied March 29, 2004, and the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 305.