Filed 9/10/15  Marriage of Quezada CA4/3
Reposted to provide correct pagination

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of CATHERINE O. and STEVEN R. QUEZADA. | |
| CATHERINE O. QUEZADA, Appellant, v. STEVEN R. QUEZADA, Respondent. | G050518 (Super. Ct. No. D342382) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge.  Reversed and remanded.

Hosford & Hosford and Valerie Ryall Hosford for Appellant.

Simoneaux Law Firm and Maggie R. Simoneaux-Cuaso for Respondent.

Catherine O. Quezada appeals from an order dismissing her motion to determine the arrearages owed by her former husband, Steven R. Quezada, under a 1997 California child support order. (To avoid confusion, we hereafter refer to the parties by their first names (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1).) The trial court concluded that under the Uniform Interstate Family Support Act (UIFSA),[1] it lacked subject matter jurisdiction to enforce the order because Catherine, Steven, and their children (who are now adults), no longer resided in California. Catherine contends the California court did not lack jurisdiction to enforce its support order because although the order was registered and enforced in Texas, Steven's state of residence, the California order was never modified and thus remained the controlling child support order. We agree and reverse the trial court's order with directions to hold further proceedings on Catherine's motion to determine arrearages.

FACTS

*The 1997 California Child Support Order*

Catherine and Steven divorced in 1993. They had two minor children—a son born in 1990, and a daughter born in 1991. Catherine was granted primary physical custody of the children, and Steven was ordered to pay child support of $983 per month—$369 for his son and $614 for his daughter. Steven and Catherine were each required to maintain the children on "medical insurance as available through their respective places of employment."

---

[1] In California, the UIFSA is codified at Family Code section 4900 et seq. Although California has adopted the 2001 version of the UIFSA, it has not yet become effective and, thus, the 1996 version of the UIFSA is the operative version for purposes of this appeal. (*In re Marriage of Haugh* (2014) 225 Cal.App.4th 963, 968, fn. 2 (*Haugh*); *Knabe v. Brister* (2007) 154 Cal.App.4th 1316, 1319, fn. 2.) All further statutory references are to the Family Code, unless otherwise indicated.

On July 10, 1997, the Orange County Superior Court, ruling on Steven's motion to modify child support, entered the relevant child support order in this case (hereafter the 1997 California Child Support Order). The court ordered Steven to pay Catherine child support of $288 per month for their son and $478 for their daughter—$766 total. Steven's compensation apparently included commissions or bonuses and the court also ordered him to pay Catherine as additional child support "the sum equal to [34 percent] of any salary received above his base pay of $2,250 [per month] . . . within [10] days of receipt." (Steven refers to this as the "Ostler-Smith" provision in reference to the case *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 41-43, which approved such additional support orders.)

*The 2003 Texas UIFSA Order Registering and Enforcing the 1997 California Support Order*

At some point, Steven moved to Texas, and Catherine and the children moved to North Carolina. In 2001, the Texas Attorney General's Office began proceedings to register and enforce the 1997 California Child Support Order in Texas state court under the UIFSA.[2] In the proceeding before us now, Steven and Catherine each requested the trial court take judicial notice of various documents from the Texas proceeding, *In the Interest of Shaun Robert Quezada and Caitlin Olivia Quezada*, 257th Judicial District Court of Harris County, Texas, Cause No. 200157879 (hereafter the Texas UIFSA Enforcement Proceeding). We describe the relevant documents from the Texas UIFSA Enforcement Proceeding that are contained in the clerk's transcript.

The Texas Attorney General filed a notice of registration and motion for enforcement of child support order in the Texas state court. The motion requested the Texas court to determine the controlling child support order. The motion described the base support order of $766 a month ($288 for the son and $478 for the daughter)

---

[2]    In Texas, the UIFSA is codified in Chapter 159 of the Texas Family Code. (Tex. Fam. Code Ann., §§ 159.001-901 (Vernon 2002 & Supp. 2005).

contained in the 1997 California Child Support Order.  It alleged that as of July 15, 2001, Steven was in arrears on his support in the total amount of $8,739.79.  It asked the Texas court to confirm the arrearages, order Steven to pay the arrearages, and order wage garnishment to pay his support obligations.

On July 2, 2002, the Texas court issued an order registering the 1997 California Child Support Order and ordering temporary support (the 2002 Texas Order).  Specifically referring to the 1997 California Child Support Order, the 2002 Texas Order stated the Texas court found "California has continuing exclusive jurisdiction over the child support issue and has issued the controlling [child support] order."  The Texas court found the 1997 California Child Support Order ordered Steven to pay $766 per month in child support and the California order had been properly registered in Texas.  It ordered Steven to make the child support payments of $766 per month to the Texas Attorney General Child Support Disbursement Unit beginning August 1, 2002.  The issue of how much in arrearages Steven owed on the 1997 California Child Support Order was reserved until a final trial.  The order also stated the enforceability of the additional support provision, i.e., the 34 percent "Ostler-Smith" provision, would be litigated at trial.  The Texas court retained jurisdiction until "all current support and medical support and child support arrearages . . . have been paid."

On October 20, 2003, the Texas court issued its "order registering and enforcing child support obligation (UISFA)" (hereafter the 2003 Texas Order).  As with its 2002 order, the 2003 Texas Order states "California has continuing exclusive jurisdiction over the child support issue and has issued the controlling [child support] order," which is the 1997 California Child Support Order.  Referring to the 2002 Texas Order, the Texas court found Steven had already been ordered to pay child support of $288 a month for his son and $478 for his daughter, "for a total of $766[] per month." The Texas court found Steven in arrears of $42,802.75 as of July 31, 2001, an amount

4

which included *all* of his unpaid child support as of that date. It entered judgment in favor of the Texas Attorney General against Steven for that amount. The typed portion of the order stating arrearages bore interest at the rate "provided by law" had a hand written interlineations that interest would accrue at the rate of six percent per annum. The Texas court ordered Steven to pay the arrearages judgment by paying $50 a month beginning November 1, 2003. Once support for "any child" terminated, Steven was to pay $338 a month on the judgment amount. And once support for both children ended he was ordered to pay $816 a month on the arrearages amount. The order provided for Steven's wages to be garnished to pay his support obligations. The Texas court retained jurisdiction over the matter until "all current support and medical support and child support arrearages . . . have been paid."

*The Current Motion and Order*

On July 9, 2013, Catherine filed a motion in this action seeking determination of child support arrearages accruing on the 1997 California Child Support Order since July 31, 2001. She additionally sought reimbursement from Steven for one-half of the cost of health insurance she was required to procure when Steven voluntarily removed the children from his employer-provided health insurance. She declared that after July 2001 (the date on which the Texas court set arrearages), despite earning commissions and bonuses over his base salary, Steven did not pay her the additional child support required under the 34 percent "Ostler-Smith" provision of the 1997 California Child Support Order. She claimed there were still amounts due on the 2003 Texas Order. She also claimed that despite having access to medical insurance for the children through his employer, Steven had removed them from his health insurance requiring her to spend over $18,000 for their health insurance from 2003 through 2009.

Steven filed a motion to dismiss Catherine's motion for a determination of arrearages due to lack of subject matter jurisdiction in the California court. He asserted the California court lacked jurisdiction to enforce the 1997 California Child Support

5

Order because Catherine, Steven, and their now adult children all resided outside the state and the 2003 Texas Child Support Enforcement Order constituted a modification of the 1997 California Child Support Order. His motion to dismiss was accompanied by a copy of the 2003 Texas Order. It also included a copy of a letter dated October 24, 2001, from Catherine to child support enforcement authorities in North Carolina concerning "the jurisdictional status and modification to" the 1997 California Child Support Order, in which Catherine stated she would "agree to the modification . . . and allow Texas to take over jurisdiction" under certain circumstances. The letter stated Steven was currently in arrears of $10,359.63, which did not include any additional support owed pursuant to the 34 percent "Ostler-Smith" provision. Steven asserted this letter constituted Catherine's consent to vesting subject matter jurisdiction over support issues with the State of Texas and to a modification of the 1997 California Child Support Order by Texas courts.

Catherine's opposition included her declaration explaining that after issuance of the 2003 Texas Order, the Texas Attorney General garnished Steven's wages for the ongoing base support amount of $766, but Steven did not pay any of the additional support amounts under the 34 percent "Ostler-Smith" provision. The Texas Attorney General's office advised her to wait until her youngest child aged out of support and then seek a single order for all the arrears. When that occurred, she was then told because her youngest was aged out of support, Texas no longer had jurisdiction to enforce the 1997 California Child Support Order and she must pursue any additional arrearages in California.

At the February 28, 2014, hearing on Catherine's motion for arrearages and Steven's motion to dismiss, the trial court took judicial notice of the 2003 Texas Order but stated it did not consider that order to be "very controlling" in making its ruling. The trial court stated that under the relevant provision of the UIFSA, section 4909, California did not have continuing jurisdiction to enforce its support orders when none of the parties

6

resided in the state—"Why should the tax payers of this state be involved in this issue at this point?" By minute order, the court granted Steven's motion to dismiss for lack of subject matter jurisdiction.

On March 19, 2014, Catherine's counsel submitted a proposed findings and order after hearing, which the court signed and entered on that date, and which Catherine served on Steven by mail on March 24. Catherine filed a combined motion for new trial, motion to vacate the judgment, and motion for reconsideration on March 10, 2014, which the trial court denied on May 2, 2014. Catherine filed her notice of appeal on July 31, 2014.

DISCUSSION

A. *Steven's Motion to Dismiss Appeal as Untimely and Motion for Sanctions*

On October 7, 2014, Steven filed a motion to dismiss Catherine's appeal as untimely and a separate motion for sanctions against Catherine for having filed a "clearly untimely" appeal. The gist of his motion to dismiss was that service on him by either Catherine or the clerk of the court of the March 19, 2014, written findings and order triggered the 60-day period for filing a notice of appeal. We denied Steven's motion to dismiss the appeal, but deferred ruling on his motion for sanctions.

In his respondent's brief, Steven in passing renews the timeliness argument. He again asserts Catherine's March 24, 2014, service upon him of the March 19, 2014, written findings and order after hearing triggered the 60-day period in which to file a notice of appeal. (Cal. Rules of Court, rule 8.104(a)(1)(A), (B).) Catherine's notice of appeal was not filed until July 31, 2014.

Steven's renewal of the timeliness argument is meritless. The entry date of an appealable order is the date it is entered in the permanent minutes, which in this case was February 28, 2014. (Cal. Rules of Court, rule 8.104(c)(2).) If the minute order directs that a written order be prepared, the entry date is the date the signed order is filed; but a written order under California Rules of Court, rule 3.1312 is not such an order.

7

(Cal. Rules of Court, rule 8.104(c)(2).)  California Rules of Court, rule 3.1312(a), requires the party *prevailing* on a motion to submit a proposed order within five days for approval conforming to the court's order, and if the prevailing party fails to do so, any other party may.  (Cal. Rules of Court, rule 3.1312(d).)  Steven did not prepare an order, so Catherine did in accordance with California Rules of Court, rule 3.1312(d).  But the February 28 minute order, which was entered in the minutes on that date, did not direct that a written order be prepared, and therefore Catherine's written order prepared under California Rules of Court, rule 3.1312 did not change the entry date.  There is no proof of service of a file stamped copy of the February 28, 2014, minute order, nor is there proof of service of a notice of entry of judgment.  Thus, Catherine had 180 days to appeal from the February 28, 2014, order and her notice of appeal filed July 31, 2014, was timely.  In view of our rejection—again—of Steven's argument that Catherine's appeal is untimely, his motion for sanctions for filing an untimely appeal is denied.

B.  *Catherine's March 2, 2015, Request for Judicial Notice*

Catherine has asked us to take judicial notice of the entire court file from the Texas UIFSA Enforcement Proceeding and of the reporter's transcript from the October 8, 2003, hearing that preceded issuance of the 2003 Texas Order.  Steven opposes the request.  We decline to take judicial notice of matters that were not before the trial court.  (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 ["'[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances"]; *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332, fn. 9 [declining to take judicial notice of materials not before the trial court].)  Catherine has not shown exceptional circumstances.

8

*C. The UIFSA Does Not Preclude the California Court from Enforcing its Support Order*

Catherine contends the trial court erred in concluding California courts lacked subject matter jurisdiction to enforce the 1997 California Child Support Order by determining arrearages because the parties no longer resided in California. We agree.

Whether the trial court had subject matter jurisdiction to enforce the 1997 California Child Support Order by determining the arrearages owed thereon is a question of law we review de novo. (*Lundahl v. Telford* (2004) 116 Cal.App.4th 305, 312 (*Lundahl*); *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774.)

Generally, a court that renders a judgment has continuing personal and subject matter jurisdiction to enforce that judgment. (See Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2013) Ch. 6A-1, (6:1), citing Code Civ. Proc., § 410.50, subd. (b) and Comment thereto; *Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 263-264.) In family law, a judgment for child support "is enforceable until paid in full or otherwise satisfied." (§ 291, subd. (a).) Moreover, "If a parent has been ordered to make payments for the support of a minor child, an action to recover an arrearage in those payments may be maintained at any time within the period otherwise specified for the enforcement of such a judgment, notwithstanding the fact that the child has attained the age of 18 years." (§ 4503.) Additionally, arrearages and accrued interest on arrearages may not be discharged retroactively. (*In re Marriage of Robinson* (1998) 65 Cal.App.4th 93, 98.)

Here, the trial court concluded that under section 4909, which is part of California's codification of the UIFSA, California has subject matter jurisdiction to enforce its support orders only so long as the parties and the supported children remained in the state. We conclude it misread that provision.

We begin with the UIFSA, "'which has been adopted by all [50] states, [and] governs . . . the procedures for establishing, enforcing and modifying child support orders in cases in which more than one state is involved. The 1996 version of the UIFSA

9

took effect in California on August 4, 1997.  (See . . . § 4900 et seq.)  Together with the Federal Full Faith and Credit for Child Support Orders Act (FFCCSOA) (28 U.S.C. § 1738B), the UIFSA ensures that in every case only one state exercises jurisdiction over child support at any given time.'  (*In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 206 . . . fn. omitted.)"  (*Haugh, supra,* 225 Cal.App.4th at p. 968, fn. omitted.)

The UIFSA provides a procedure for registering a support order from one state, i.e., the issuing state which in this case is California, for *enforcement* in another state, i.e., Texas.  (§ 4950 et seq.; Texas Fam. Code, § 159.601 et seq.)  Once registered, the support order may be enforced by the new tribunal, but it may not be modified unless all the UIFSA's requirements are met.  (§ 4952, subd. (c); Texas Fam. Code § 159.603, subd. (c); see also § 4959 ["registered order may be modified only if the requirements of [§ 4960] have been met"]; Texas Fam. Code, § 159.610 [same].)  As will be discussed anon, the 1997 California Child Support Order was registered for enforcement in Texas, but it was not modified by the Texas court.  This is not a case in which there are conflicting support orders or in which the California court was being asked to enforce a foreign support order.  (See *Lundahl, supra,* 116 Cal.App.4th at p. 315 ["UIFSA's mechanism for establishing 'controlling order' applies only to multiple child support orders"].)

Section 4909, subdivision (a)(1), which the trial court read as divesting the California court of jurisdiction to enforce its support order provides, "A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:  [¶] (1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued."  Relying on this provision, the trial court concluded that because the parties no longer resided in California, it had no jurisdiction to determine child support arrears.

10

But read in the context of the entire statute, and indeed the entire statutory scheme, it is apparent section 4909 concerns continuing jurisdiction to *modify* a support order, not jurisdiction to enforce its own existing support order when there is no other support order. As observed in *Haugh*, *supra,* 225 Cal.App.4th at page 969, "The 'cornerstone' of the UIFSA is the concept of 'continuing, exclusive jurisdiction,' codified in California as section 4909. [Citation.] '[The] UIFSA was designed to ensure that only one state at a time would have jurisdiction to make and *modify* a child support order. "[T]he central jurisdictional feature of UIFSA is the concept of continuing, exclusive jurisdiction. Under UIFSA, a court that makes a valid child support order retains exclusive jurisdiction to modify the order as long as the requirements for continuing, exclusive jurisdiction remain fulfilled. The court of another state may enforce a child support order registered in that state, but may not modify it unless the decree state has lost its continuing, exclusive jurisdiction."' [Citation.]" (Italics added.)

Section 4909, subdivision (b), provides, "A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction *to modify* the order if the order has been modified by a tribunal of another state . . . ." Section 4909, subdivision (c), provides if a California support order has been *modified* by a tribunal of another state pursuant to the UIFSA, then California loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the original California support order, but it may still enforce the original support order as to amounts accruing before the modification, enforce nonmodifiable aspects of the original California order, or provide for other relief for violations that occurred before the order was modified by another state.

Other provisions of the UIFSA support our conclusion that section 4909, subdivision (a)'s continuing jurisdiction provision upon which the trial court relied does not pertain to the court's jurisdiction to enforce *its own* orders that have not been

11

modified by another tribunal. Indeed, section 4915 underscores this conclusion specifying the UIFSA only applies to the proceedings brought to: (1) Establish a support order (including by a parentage determination); (2) Enforce of an unregistered out-of-state support or wage withholding order; (3) Register an out-of-state support order for enforcement or (in limited circumstances) modification; (4) Modify a California support order; and (5) Assert jurisdiction over nonresidents as allowed under sections 4905 to 4914. A proceeding to only enforce a court's own support order is not included.

In short, section 4909 does not provide California looses jurisdiction to *enforce* its own existing support orders once the parties leave the state. Rather, it provides the court looses jurisdiction to *modify* support orders once the other tribunal has asserted jurisdiction by modifying the support order in accordance with the UIFSA. The 1997 California Child Support Order was not modified by the Texas court; it was only registered and enforced. The temporary 2002 Texas Order and the final 2003 Texas Order both confirmed California had exclusive continuing jurisdiction over child support and the 1997 California Child Support Order was the controlling child support order.

Steven makes little attempt at justifying the basis for the trial court's ruling—i.e., that it had no subject matter jurisdiction to enforce the 1997 California Child Support Order because the parties no longer resided in the state. Rather, because there was no written statement of decision, he invokes the doctrine of implied findings (see *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58-60 (*Fladeboe*) [doctrine of implied findings requires appellate court to infer trial court made all factual findings necessary to support the judgment]). He argues we should infer a finding by the trial court that the 2003 Texas Order constituted a modification of the 1997 California Child Support Order. Thus, he argues that because the Texas court modified the 1997 California Child Support Order, under section 4909, subdivision (b), California no longer has jurisdiction to enforce its support order.

12

Steven's contention fails for several reasons. First, the subdivision to which he refers, again, pertains to the court's continuing jurisdiction to *modify* an existing support order. The subdivision provides, "A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction to *modify* the order *if the order has been modified by a tribunal of another state* pursuant to this chapter or a law substantially similar to this chapter." (§ 4909, subd. (b), italics added.) Catherine was not seeking to modify the 1997 California Child Support Order (or the 2003 Texas Order). She was seeking to *enforce* the support provisions of the 1997 California Child Support Order.

Moreover, the premise of Steven's argument is wrong. There is nothing in the trial court record supporting Steven's contention the Texas court modified the 1997 California Child Support Order. (See *Fladeboe, supra,* 150 Cal.App.4th at p. 60 [review trial court's implied factual findings for substantial evidence].) As already mentioned, even though the 1997 California Child Support Order was *registered for enforcement* in Texas, the Texas court could only modify the 1997 California Child Support Order under certain narrow circumstances. A modification could be made only upon a noticed motion and a hearing following which the Texas court made threshold jurisdiction findings. (See §§ 4958-4963; Texas Fam. Code, §§ 159.609-159.615.)

Steven offered nothing to the trial court suggesting there was any motion to modify the 1997 California Child Support Order before the Texas court or that the Texas proceeding was anything other than one to register the 1997 California Child Support Order for enforcement. Nothing in the 2003 Texas order indicates the Texas court was modifying the 1997 order or that there was a motion to modify the 1997 California Child Support Order before the Texas court. To the contrary, the Texas court specifically identified the 1997 California Child Support Order as the controlling support order and identified California as the tribunal as having continuing exclusive jurisdiction over

13

support. The Texas court ordered Steven to pay his child support in accordance with the 1997 California Child Support Order, as calculated the support arrearages owing under the 1997 California Child Support Order as of July 31, 2001, entering judgment on that amount.

Despite the complete absence of any request by any party to modify the 1997 California Child Support Order, and the clear language of the Texas order—that it was one "registering and enforcing" the 1997 California Child Support Order, Steven insists the 2003 Texas order effected a modification of the 1997 order in three ways.

First, he asserts the Texas court modified the 1997 California Child Support Order by reducing his base support obligation as to his daughter from $478 a month to $428 a month. His argument is premised upon an attempt to capitalize on what is either poor penmanship by the judicial officer, or poor photocopy quality of the order, by selectively quoting from the order. The Texas court's 2002 temporary order registering the 1997 California Child Support Order and setting temporary support, ordered Steven to pay (as ordered in the 1997 California Child Support Order) the current support amount of $766 per month. The 2003 Texas Order contained typed language that Steven had been ordered to pay "current child support of $766.00 monthly." The typed statement was followed by a handwritten notation that "[Steven] was ordered to pay $288.00 for [his son] and $478.00 for [his daughter] for a total of $766.00 per month." The handwriting on the order, however, is such that the "7" in "$478.00" could be read as a "2." Throughout his brief Steven quotes the 2003 Texas Order as being that Steven was to pay $288 for his son and *$428* a month for his daughter, followed by ellipses whereby he omits the final words of the sentence "for a total of $766.00 per month" by which it would be plain the figure is a "7" not a "2." Steven also argues the fact the Texas court reduced the support for his daughter was "confirmed" when in 2008, after his son aged out of support, a new administrative wage garnishment order was obtained by the Texas Attorney General for the $428 amount. The copy of the wage garnishment order to

14

which he refers contained in the clerk's transcript is of poor quality and it is not clear the number is a "2" or a "7." Moreover, in view of the fact no party sought modification of the support obligation imposed by the 1997 California Child Support Order and the total support referred to in the 2003 Texas Order was identical to the support ordered in the 1997 California Child Support Order, we cannot construe a wage garnishment order obtained by the Texas Attorney General five years later as a modification of the 1997 California Child Support Order that complied with the requirements of the UIFSA.

Steven next contends the Texas court modified the 1997 California Child Support Order by stating the arrearages would bear interest at the Texas legal rate of interest of six percent applicable to child support orders (Texas Fam. Code, § 157.265), rather than California's 10 percent legal rate of interest (Code Civ. Proc., § 685.030, subd. (a)). Again, there was no modification request before the Texas court, and we cannot construe the Texas court's designation of the applicable interest rate on the arrearages order to be a modification of the 1997 California Child Support Order.

Steven argues the 2003 Texas Order modified the 1997 California Child Support Order because the 2003 Texas Order is "silent as to the [34 percent] Ostling-Smith Order." We are not entirely clear as to Steven's point, i.e., if he is arguing the Texas court modified the 1997 California Child Support Order by relieving Steven of the 34 percent additional support order. There is nothing in the record to support such an argument, and indeed the record before us suggests the opposite. As already discussed, the petition before the Texas court was to *register and enforce* the 1997 California Child Support Order—there was no motion before the Texas court to modify the 1997 California Child Support Order. The original enforcement petition filed by the Texas Attorney General stated Steven's base support arrearages were $8,739.79 as of July 15, 2001. (The 2001 letter from Catherine to the North Carolina support authorities stated the arrears in base support was $10,359.63, which did not include any additional

15

support owed pursuant to the 34 percent "Ostler-Smith" provision.)  The temporary 2002 Texas Order stated the enforceability of the 34 percent additional support provision would be decided at the trial on the total arrearages Steven owed under the 1997 California Child Support Order.  The final Texas enforcement order—the 2003 Texas Order—found Steven owed arrearages of $42,802.75 as of July 31, 2001, so it obviously enforced the additional support provision.  The fact the Texas enforcement order did not specifically refer to the future application of the additional support provision was not a modification of the 1997 California Child Support Order.

Finally, in passing, Steven asserts Catherine "stipulated" the Texas court could modify the 1997 California Child Support Order and would have exclusive jurisdiction over support issues.  He refers to the unauthenticated copy of Catherine's 2001 letter to child support authorities in North Carolina concerning "the jurisdictional status and modification to" the 1997 California Child Support Order, in which Catherine stated she would "agree to the modification  . . . and allow Texas to take over jurisdiction" under certain circumstances.  Even were the letter properly before the trial court (or this court), it contains no terms of any modification and nothing in it can be construed as a "stipulation" to a modification of support that never occurred.

In sum, the 2003 Texas Order *enforced* the 1997 California Child Support Order, by directing Steven to pay arrearages that had accrued as of July 1, 2001, and allowing his wages to be garnished to pay the arrearages judgment and his current support obligations.  It did not modify the 1997 California Child Support Order, which remains the controlling and indeed the only child support order in this case.  Thus, the

trial court erred by concluding it had no jurisdiction to enforce its own support order.

## DISPOSITION

The order is reversed and the matter remanded to the trial court for further proceedings on Appellant's motion.  Respondent's motion for sanctions filed October 7, 2014, is denied.  Appellant's request for judicial notice filed March 2, 2015, is denied. Appellant is awarded her costs on this appeal.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


THOMPSON, J.