Dorena **BANKLER**, Plaintiff and Appellee,

v.

Jack **BANKLER**, Defendant and Appellant.

No. 971149–CA.

Court of Appeals of Utah.

July 30, 1998.

---

R. Clayton Huntsman, Huntsman & Christensen, St. George, for Defendant and Appellant.

Ronald L. Read, St. George, for Plaintiff and Appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Jack Bankler appeals the trial court's denial of his petition to modify a domesticated California divorce decree, asserting the court erred in determining it lacked jurisdiction to modify the decree. We affirm.

## BACKGROUND

Dorena Bankler obtained a divorce from Mr. Bankler in December 1991 in a decree issued by the San Bernardino County Superior Court in California. The Judgment of Dissolution ordered Mr. Bankler to pay Ms. Bankler spousal support of $1200 per month from October 1, 1991, through October 1995, at which time the award would be reduced to zero. The court specifically "maintain[ed] jurisdiction over spousal support for an additional 4 years [after October 1995] at which time it shall forever terminate." The court ordered that the amount of support would not be modifiable "except upon the death of [Ms. Bankler in] the first 4 year period, thereafter death, remarriage, cohabitation, or further order of the court shall be grounds for earlier termination during the second 4 year period."

In 1995, Ms. Bankler sought continuation of the spousal support for an additional four years. Following a hearing that Mr. Bankler failed to attend, the California court entered an Order After Hearing in April 1996, continuing the spousal support for an additional four year period.

In October 1996, after Mr. Bankler had moved to Utah, Ms. Bankler domesticated the California court's orders in Utah's Fifth District Court and filed a Motion for Order to Show Cause alleging Mr. Bankler had failed to pay spousal support since September 1995. Mr. Bankler responded by filing a petition to modify the California decree in the Fifth District Court, claiming substantial material changes in circumstances prevented his continued payment of spousal support. The Fifth District Court dismissed the petition to modify, holding it had "no jurisdiction to modify the decree of divorce arising in a sister state, and the matter is best handled in the sister state." Mr. Bankler appeals.

## ISSUE & STANDARD OF REVIEW

The sole issue before us is whether the Fifth District Court had subject matter jurisdiction to modify the California divorce decree after it was domesticated in Utah. " '[T]he propriety of [a] jurisdictional determination ... [is] a question of law upon which we do not defer to the district court.' " *Bonneville Billing v. Whatley*, 949 P.2d 768, 771 (Utah Ct.App.1997) (quoting *State Dep't of Soc. Servs. v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989)).

## ANALYSIS

Mr. Bankler asserts that by domesticating the California decree and all subsequent orders entered by the California court, Ms. Bankler subjected herself, and the case in its entirety, to the Utah court's jurisdiction. He claims that a petition to modify alimony is essentially a request to "reopen" the decree as that term is used in the Utah Foreign Judgment Act, that such a petition is a valid defense to an action for enforcement, and that the Utah court accordingly has subject matter jurisdiction over the modification petition.

Ms. Bankler argues that notwithstanding language of the Utah Foreign Judgment Act, the Utah court lacks subject matter jurisdiction to *modify* a California divorce decree. She further argues that Utah statutes confer exclusive continuing jurisdiction upon the original court that issued the divorce decree, and that her acts of domesticating the decree and of subsequently initiating enforcement

proceedings do not abrogate the California court's exclusive jurisdiction.

■ "The Utah Foreign Judgment Act provides a mechanism for the enforcement of a foreign judgment in Utah." *Pan Energy v. Martin,* 813 P.2d 1142, 1143 (Utah 1991). The Utah Foreign Judgment Act provides:

(1) As used in this chapter, "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court whose acts are entitled to full faith and credit in this state.

(2) A copy of a foreign judgment authenticated in accordance with an appropriate act of Congress or an appropriate act of Utah may be filed with the clerk of any district court in Utah. The clerk of the district court shall treat the foreign judgment in all respects as a judgment of a district court of Utah.

(3) A foreign judgment filed under this chapter has the same effect *and is subject to the same procedures, defenses, enforcement, satisfaction, and proceedings for reopening, vacating, setting aside, or staying as a judgment of a district court of this state.*

Utah Code Ann. § 78–22a–2 (1996) (emphasis added). Once a foreign judgment is filed, it is "subject to the same procedures to attack or enforce it as a Utah judgment." *Pan Energy,* 813 P.2d at 1144. As noted earlier, Mr. Bankler essentially argues that his petition to modify is allowed under section 78–22a–2(3), as a "reopening" of the foreign judgment.

■ Rules 59 and 60 of the Utah Rules of Civil Procedure describe the methods by which a party may attack or reopen a domestic judgment. Pursuant to those rules, a party may timely move for a new trial or an amendment of the judgment,[1] or move for

relief from a judgment due to mistake, newly discovered evidence, fraud, and the like.[2]

■ Our supreme court discussed the limited ability to address issues decided in a foreign judgment in *Data Management Systems, Inc. v. EDP Corp.,* 709 P.2d 377 (Utah 1985) (per curiam). In that case, Data Management obtained a default judgment in Wisconsin in a breach of contract action against EDP. Pursuant to the Utah Foreign Judgment Act, Data Management domesticated the Wisconsin judgment in Salt Lake County in order to enforce the judgment. EDP asked both the Wisconsin and Utah courts to set aside the judgment. The Utah court denied the motion and EDP appealed. During the pendency of the appeal, the Wisconsin court reasserted its jurisdiction over EDP. *See id.* at 378–79. Data Management then contended that the action of the Wisconsin court mooted the issues on appeal before the Utah Supreme Court. *See id.* at 379. Because the Utah Supreme Court gave full faith and credit to the "judgment and determinations of the Wisconsin courts," *id.,* the court held that

[n]either Rule 60(b) nor our Utah Foreign Judgment Act allows our Utah courts to reopen, reexamine, or alter a foreign judgment duly filed in this state, *absent a showing of fraud or the lack of jurisdiction or due process in the rendering state. Only these defenses may be raised to destroy the full faith and credit owed to the foreign judgment* sought to be enforced under the Foreign Judgments [sic] Act.

*Id.* at 381 (citing *Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947)) (emphasis added). Therefore, the remedies available under Rule 59 and 60 are limited by the Full Faith and Credit Clause of the United States Constitution when a foreign

---

1. Rule 59 states that "a new trial may be granted to all or any of the parties and on all or part of the issues," and provides a mechanism by which a party may make a motion "to alter or amend the judgment" no later than 10 days after the judgment is entered. Utah R. Civ. P. 59.

2. Rule 60 provides that a court may "in the furtherance of justice" grant relief from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial ...; (3) fraud ..., misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ...; or (6) any other reason justifying relief from the operation of the judgment.
Utah R. Civ. P. 60(b).

judgment is at issue. *See* U.S. Const. art. IV, § 1.

◼ In this case, Mr. Bankler does not rely upon any of the defenses enumerated in *Data Management* to attack the validity of the California decree; he has not asserted fraud or lack of jurisdiction or due process by the California court, as required by *Data Management.* Instead, Mr. Bankler seems to argue that his petition to modify is a "defense" to Ms. Bankler's enforcement efforts.[3] We do not agree. A petition to modify a divorce decree is not an attack on a judgment pursuant to Rules 59 or 60 of the Utah Rules of Civil Procedure. Rather, it is a request for the court to address prospective alimony based on a demonstrated change of circumstances.[4]

◼ Actions to modify a divorce decree should "properly be brought in the forum which issued the decree." *Angell v. Sixth Dist. Court,* 656 P.2d 405, 406–07 (Utah 1982) (per curiam). In *Rimensburger v. Rimensburger,* 841 P.2d 709 (Utah Ct.App.1992), a wife petitioned the Third District Court in Salt Lake County for modification of a Fifth District Washington County divorce decree. On appeal, this court held that "the court issuing the original decree retains exclusive jurisdiction to modify its decrees. Parties wishing to modify a decree must do so *in the original forum.*" *Id.* at 710 (emphasis added).

Although *Rimensburger* concerned subject matter jurisdiction of two Utah courts, other Utah cases have discussed the question of subject matter jurisdiction when the courts concerned are the courts of sister states. For example, in *Oglesby v. Oglesby,* 29 Utah 2d 419, 510 P.2d 1106 (Utah 1973), our supreme court addressed the question of whether a Washington state court could modify a Utah divorce decree. Although the Washington court had reduced the husband's support obligation, our supreme court held that the decree could not be considered properly "modified" by the Washington court because the decree could only be "changed by a duly constituted Utah court." *Id.* 510 P.2d at 1107. The court noted that constitutional problems would arise if a "responding state had the power to destroy the legitimate judgments of sister states." *Id.* at 1108.

◼ Similarly, in *Scott v. Scott,* 19 Utah 2d 267, 430 P.2d 580 (1967), the Utah Supreme Court addressed the question of whether a Utah court could modify a Nevada divorce decree. When the wife sued to enforce the judgment in Utah, the husband counterclaimed, asserting that he had undergone such a material change of circumstances that the decree should be modified to excuse him from making future alimony payments. Our supreme court held "the lower court was correct in its holding that it had no power or authority to change or modify the Nevada judgment." *Id.* at 272, 430 P.2d 580. Therefore, Utah courts may not consider a petition to modify terms of a divorce decree entered by a foreign jurisdiction and domesticated in Utah for enforcement purposes. The fact that Ms. Bankler domesticated and filed all of the California orders pertaining to the divorce does not change that conclusion.

## CONCLUSION

The Utah Foreign Judgment Act does not confer jurisdiction on a Utah court to prospectively modify an order issued by a foreign state court in a divorce action, nor does it permit reopening a judgment absent allegations of fraud, lack of jurisdiction, or lack

---

**3.** Mr. Bankler also appears to argue he can "reopen" the California judgment to assert defenses to the alimony award already accrued. That argument also fails under *Data Management.*

**4.** The language of the statute conferring continuing jurisdiction upon a divorce court demonstrates that a court's consideration of a petition to modify is based only upon *future* status, and is not a "reopening" of issues already decided based upon conditions extant at the time of the divorce. Section 30–3–5(7)(g) provides:

(i) The court has continuing jurisdiction to make substantive changes and new orders regarding alimony *based on a substantial material change in circumstances not foreseeable at the time of the divorce.*
(ii) The court may not modify alimony or issue a new order for alimony to address needs of the recipient *that did not exist at the time the decree was entered,* unless the court finds extenuating circumstances that justify that action. Utah Code Ann. § 30–3–5(7)(g) (Supp.1997) (emphasis added).

of due process. We therefore affirm the trial court's judgment. Pamela T. Greenwood, Judge

BENCH and JACKSON, JJ., concur.