2011 UT App 150

**Teddy Eugene OSBORNE, Petitioner and Appellant,**

v.

**Negha Jean OSBORNE, Respondent and Appellee.**

No. 20090891–CA.

Court of Appeals of Utah.

May 12, 2011.

Teddy Eugene Osborne, Vernal, Appellant Pro Se.

Negha Jean Osborne, Phoenix, Arizona, Appellee Pro Se.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## MEMORANDUM DECISION

CHRISTIANSEN, Judge:

¶ 1 Petitioner Teddy Eugene Osborne appeals the district court's October 14, 2009 order awarding Respondent Negha Jean Osborne a portion of Mr. Osborne's railroad retirement and awarding judgment to Ms. Osborne for alimony arrearages. We affirm.[1]

¶ 2 In January 2009, Mr. Osborne retired earlier than expected due to a disability. In May 2009, Ms. Osborne, who had relocated to Utah after the parties' divorce, moved the Third District Court in Utah to enter a quali-fied domestic relations order, which was necessary before the Railroad Retirement Board would allocate Mr. Osborne's retirement, and to enter an order awarding her alimony arrearages. On October 14, 2009, the district court entered a qualified domestic relations order entitled "Order Dividing Railroad Benefits" and an order awarding a money judgment in Ms. Osborne's favor (collectively, October 2009 Order). Mr. Osborne argues that the district court did not have subject matter jurisdiction to consider Ms. Osborne's motion or to enter the October 2009 Order because the Circuit Court of Cleburne County, Arkansas did not transfer the case to Utah until November 2009. We disagree.

¶ 3 Before acting on Ms. Osborne's motion, and pursuant to Ms. Osborne's April 2009 request, the district court domesticated the Arkansas Decree of Divorce (Decree) as a judgment of Utah, pursuant to the Utah Foreign Judgment Act, *see generally* Utah Code Ann. §§ 78B–5–301 to –307 (2008). Thereafter, the Decree "ha[d] the same effect and [was] subject to the same procedures, defenses, [and] enforcement … as a judgment of a district court of [Utah]." *Id.* § 78B–5–302(3). The domestication of a foreign divorce decree in Utah enables Utah courts to enforce, but not modify, a decree. *See id.* § 78B–5–302; *Bankler v. Bankler,* 963 P.2d 797, 799–801 (Utah Ct.App.1998) (clarifying that "[o]nce a foreign judgment is filed, it is subject to the same procedures to attack or enforce it as a Utah Judgment," but that "[t]he Utah Foreign Judgment Act does not confer jurisdiction on a Utah court

---

1. We note at the outset that Mr. Osborne fails to comply with the Utah Rules of Appellate Procedure in several respects. Much of Mr. Osborne's statement of the facts lacks citation to the record as is required under rule 24(a)(7) of the Utah Rules of Appellate Procedure, *see* Utah R.App. P. 24(a)(7) (providing that an appellant's "statements of fact and references to the proceedings below shall be supported by citations to the record"). Mr. Osborne's argument section similarly lacks citation to those parts of the record on which he relies, *see id.* R. 24(a)(9) (requiring an appellant to cite to the record on which he or she relies). To the extent that Mr. Osborne challenges the district court's factual findings, he wholly fails to marshal the evidence in support of those findings, *see id.* ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). "In order to challenge a court's factual findings, an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Chen v. Stewart,* 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotation marks omitted). Because Mr. Osborne fails to do so, "we assume that the evidence supports the trial court's findings," *see id.* ¶ 80. Although we may affirm on "that basis alone," *see id.,* and although these violations, in their totality, are grounds for affirming without discussing the issues, we afford leniency to Mr. Osborne as a pro se litigant, *see Lundahl v. Quinn,* 2003 UT 11, ¶ 4, 67 P.3d 1000 (per curiam), and exercise our discretion to reach the merits of his arguments.

to prospectively modify" a foreign judgment (internal quotation marks omitted)).

¶ 4 We determine that the district court's October 2009 Order merely *enforced* the Decree under Utah Law, *see* Utah Code Ann. § 78B–5–307 (specifying that the Utah Foreign Judgment Act "shall be construed to effectuate the general purpose to make uniform the law of those states which enact it"). The Decree does not explicitly require a qualified domestic relations order to allow the distribution of the retirement funds, but it plainly states that upon Mr. Osborne's retirement, in lieu of alimony, Ms. Osborne is entitled to receive a "portion previously allocated for [her] by the Railroad [R]etirement [P]ension [P]lan." The qualified domestic relations order merely effectuated the allocation of Tier II benefits to Ms. Osborne by instructing the Railroad Retirement Board to disburse the funds as the Decree allocated them. The district court therefore correctly enforced the Decree by entering the October 2009 Order.[2]

¶ 5 In a related argument, Mr. Osborne challenges the district court's alleged modification of the parties' Decree to provide for the allocation of his Tier II railroad retirement to Ms. Osborne. The parties' Decree provides, in part,

[Mr. Osborne] will grant a monthly support check to [Ms. Osborne] in the amount of $500 due and payable the first of each month.... Payments will continue until the death of either party, or upon the retirement of [Mr. Osborne], at which time that portion previously allocated for [Ms. Osborne] by the Railroad [R]etirement [P]ension [P]lan, will be paid in lieu of monthly support payments. The amount of monthly retirement will be comparable to the monthly payments for support.

¶ 6 Mr. Osborne contends that the language providing that upon his retirement

the "portion previously allocated for [Ms. Osborne] by the Railroad [R]etirement [P]ension [P]lan ... will be paid in lieu of monthly support payments," does not refer to his Tier II benefits, but rather to the indivisible Tier I divorced spouse benefit. "We interpret a divorce decree according to established rules of contract interpretation." *Moon v. Moon*, 1999 UT App 12, ¶ 18, 973 P.2d 431 (internal quotation marks omitted), *cert. denied*, 982 P.2d 89 (Utah 1999). "Where possible, the underlying intent of a contract is to be gleaned from the language of the instrument itself; only where the language is uncertain or ambiguous need extrinsic evidence be resorted to." *Land v. Land*, 605 P.2d 1248, 1251 (Utah 1980); *see also Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 19, 215 P.3d 933 ("Only where there is ambiguity in the terms of the contract may we ascertain the parties' intent from extrinsic evidence.").

¶ 7 We conclude that the district court did not abuse its discretion in its interpretation of the parties' Decree. The Tier II benefits described in the Railroad Retirement Act of 1974 (the Act), *see generally* 45 U.S.C. §§ 231–231v (2006), are akin to benefits under a defined benefit plan and were, thus, subject to division as contemplated by the Decree. *See generally id.* § 231a(b) (describing employees' eligibility for Tier II benefits); *id.* § 231b (explaining computation of Tier II benefits); *id.* § 231m(b)(2) (providing that Tier II benefits can be assigned in a divorce proceeding and therefore distributed according to a divorce decree); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573–75, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (explaining that the Act provides two tiers of benefits: the first tier for benefits similar to social security and the second tier for benefits similar to a private pension program), *superseded in part by statute*, 45 U.S.C. § 231m(b)(2) (2006); *In re Marriage of Zappanti*, 80 P.3d 889, 894

---

2. Pursuant to the domestication procedure Ms. Osborne followed, the district court would not have had subject matter jurisdiction to *modify* the Decree at the time it heard this matter. Nevertheless, we note that the district court has since acquired subject matter jurisdiction to modify the Decree. The Circuit Court of Cleburne County, Arkansas transferred the case to Utah in November 2009. We decline to address

whether this subsequent transfer of jurisdiction renders Mr. Osborne's argument moot. *See Frito–Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 33, 222 P.3d 55 ("An appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." (internal quotation marks omitted)).

(Colo.Ct.App.2003) (contrasting, for purposes of dividing marital assets in a divorce, nondivisible Tier I benefits with divisible Tier II benefits). Conversely, as the district court determined, the divorced spouse benefit described in the Act is an automatic Tier I benefit to Ms. Osborne and is not a divisible marital asset. *See* 45 U.S.C. § 231a(c)(4) (stating that the divorced wife of a railroad employee is entitled to a benefit as long she is entitled to a benefit under section 202(b) of the Social Security Act, has reached retirement age, and is unmarried); *id.* § 231m(a) (generally prohibiting the assignment of Tier I benefits). *See generally Olsen v. Olsen,* 2007 UT App 296, ¶¶ 13–15, 22, 169 P.3d 765 (comparing the Social Security Act to the Act analyzed in *Hisquierdo* and concluding that social security benefits, like Tier I benefits, cannot be classified or divided as a marital asset upon divorce although "anticipated social security income" may be considered "in fashioning an equitable remedy at divorce"); *Zappanti,* 80 P.3d at 894 (exempting Tier I benefits from division in a divorce).

¶ 8 The Decree provides that "[p]ayments will continue until the death of either party, or upon the retirement of [Mr. Osborne], at which time that portion previously allocated for [Ms. Osborne] by the Railroad [R]etirement [P]ension [P]lan, will be paid in lieu of monthly support payments." The district court did not abuse its discretion in determining that Ms. Osborne would not have intended to replace her alimony benefit with a benefit she was already guaranteed to receive upon Mr. Osborne's retirement, i.e., the divorced spouse benefit. Furthermore, the phrase "[t]he amount of monthly retirement will be comparable to the monthly payments for support" implies that Mr. and Ms. Osborne had predetermined the amount of the benefit Ms. Osborne would receive. If so, they must have necessarily intended "the amount of monthly retirement" as a Tier II benefit. In contrast, had the parties intended the benefit to be a divorced spouse benefit, a Tier I benefit, they would not have been able to dictate the amount and it might or might not have been comparable to the ali-

mony payment of $500 per month.[3] We thus conclude that the district court did not abuse its discretion in its interpretation and enforcement of the domesticated Decree.

■ ¶ 9 Mr. Osborne also argues that the district court improperly awarded Ms. Osborne a judgment of $5950 for unpaid alimony from August 1, 2008, through July 31, 2009. He contends that he did not owe alimony to Ms. Osborne during the six-month waiting period between his retirement in January 2009 and when he began receiving his retirement. The district court correctly interpreted and enforced the Decree, under its plain meaning, by concluding that Mr. Osborne owed Ms. Osborne alimony until she began receiving her distribution from the Railroad Retirement Pension Plan. To the extent that Mr. Osborne seeks to modify the Decree based on his disability, he cannot do so because he has not filed a petition to modify, *see* Utah R. Civ. P. 106 ("[P]roceedings to modify a divorce decree or other final domestic relations order shall be commenced by filing a petition to modify."); *supra* note 2.

■ ¶ 10 The district court also did not abuse its discretion by awarding Ms. Osborne $1000 of her attorney fees. *See generally* Utah Code Ann. § 30-3-3(2) (Supp. 2010). However, we deny Ms. Osborne's request for attorney fees on appeal. She did not "state [her] request explicitly and set forth the legal basis for such an award," Utah R.App. P. 24(a)(9), and, in any event, as a pro se litigant, Ms. Osborne is not entitled to an award of attorney fees, *see Smith v. Batchelor,* 832 P.2d 467, 473–74 (Utah 1992) ("It is the general rule that pro se litigants should not recover attorney fees for successful litigation.").

¶ 11 Affirmed.

¶ 12 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and J. FREDERIC VOROS JR., Judge.

---

3. And, in fact, it would not have been. Mr. Osborne states in his reply brief that Ms. Osborne will receive $910 per month when she becomes eligible for her Tier I divorced spouse

benefit. Ms. Osborne will receive only $341.65 as her Tier II benefit pursuant to the Decree, the October 2009 Order, and the Order Dividing Railroad Benefits.