**Opinion filed April 5, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00136-CV
_____

## JERRY DON BIEN, Appellant

## V.

## ESTHER BIEN, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. 93-06-319**

## O P I N I O N

This appeal arises from a post-divorce proceeding to enforce a property division of railroad retirement benefits. The trial court determined that appellee, Esther Bien, was entitled to a money judgment against appellant, Jerry Don Bien, in the amount of $39,912.87 for her share of "Tier II benefits" he had received as a part of his railroad retirement. The trial court also ordered Jerry to pay Esther's attorney's fees in the amount of $1,500. Jerry challenges the sufficiency of the evidence supporting the trial court's order in three issues. We modify and affirm.

*Background Facts*

Jerry and Esther were married in 1972. Their divorce occurred in 1994. The agreed final decree of divorce contained the following property award to Esther:

> ESTHER JEAN BIEN is awarded, and the Railroad Retirement Board is directed to pay, an interest in the portion of JERRY DON BIEN's benefits under the Railroad Retirement Act (45 U.S.C. § 231, et. seq.) which may be divided as provided by section 14 of that Act (45 U.S.C. § 231m). ESTHER JEAN BIEN's share shall be computed by multiplying the divisible portion of JERRY DON BIEN'S monthly benefit by a fraction the numerator of which is the number of years JERRY DON BIEN worked for a railroad employer during the period of marriage, and the denominator of which shall be total number of years employed by a railroad employer at retirement, and then dividing the product by two.

Jerry testified that he began receiving a "disability check" as a railroad employee in 1994 "shortly after the divorce." Esther testified that, at some point many years later, she discovered that a portion of the benefits that Jerry had been receiving since 1994 constituted Tier II benefits. Upon contacting the Railroad Retirement Board in 2006, the board began paying her $237.98 a month from Jerry's railroad retirement annuity. Jerry testified that his monthly railroad retirement benefits were reduced at that time by the same amount. Esther instituted the underlying enforcement action in order to recover her share of the Tier II benefits that Jerry received from 1994 until she began receiving her proportionate share of the benefits directly from the Railroad Retirement Board in 2006.

*Standard of Review*

We review the trial court's ruling on a post-divorce motion for enforcement under an abuse of discretion standard. *See Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The test for abuse of discretion is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

Jerry couches his three issues on appeal as challenges to the legal and factual sufficiency of the evidence. Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Child v. Leverton*, 210 S.W.3d 694, 696 (Tex. App.—Eastland 2006, no pet.). Because we apply an abuse of discretion standard to an enforcement proceeding, the traditional sufficiency standards of review overlap the abuse of discretion standard, and appellate courts apply a hybrid analysis. *Echols v. Olivarez*, 85 S.W.3d 475, 476

(Tex. App.—Austin 2002, no pet.); *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Once it has been determined that the abuse of discretion standard applies, an appellate court engages in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *Child*, 210 S.W.3d at 696. The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there. *Id.* The appellate court then proceeds to determine whether, based on the evidence, the trial court made a reasonable decision. *Id.*

In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party and indulge every inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 821–22, 827. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). To address a factual sufficiency challenge, we must consider and weigh all of the evidence and should set aside a fact finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986).

*Analysis*

In his first issue, Jerry challenges the legal and factual sufficiency of the evidence that Esther was entitled to any benefits prior to attaining the age of sixty-two. He cites 45 U.S.C. § 231a(c)(4) in support of this contention. His reliance on Section 231a(c)(4) is misplaced. As explained in *Osborne v. Osborne*, 260 P.3d 202, 204–05 (Utah Ct. App. 2011), Section 231a(c)(4) applies to Tier I railroad retirement benefits.[1] The division of Tier II benefits in a divorce proceeding is governed by 45 U.S.C. § 231m. *Osborne*, 260 P.3d at 204–05.

---

[1]The court's opinion in *Osborne* contains an excellent discussion regarding the distinction between Tier I and Tier II railroad retirement benefits. As set out in *Osborne*, Tier I benefits are akin to social security benefits. 260 P.3d at 204–05. Accordingly, they do not constitute a divisible asset in a divorce proceeding. *Id.* However, a divorced spouse may qualify for Tier I benefits under federal statute regardless of, or even in the complete absence of, specific language in the divorce decree regarding such an annuity. *See Gilmore v. Garner*, 580 S.E.2d 15, 18 (N.C. Ct.. App. 2003). Tier II benefits constitute a divisible marital asset because they are similar to a traditional defined benefit plan. *Osborne,* 260 P.3d at 204–05.

3

Neither Section 231m nor the divorce decree contains a requirement that Esther attain any particular age before receiving her proportionate share of Tier II benefits. Accordingly, there is no legal basis for appellant's evidentiary challenge based on Esther's age. Furthermore, we conclude that the trial court did not abuse its discretion in awarding a recovery to Esther for her share of Tier II benefits that Jerry had received in the past. Appellant's first issue is overruled.

Jerry asserts in his second issue that there is no evidence that he received Tier II benefits. However, the trial court admitted into evidence a letter from the Railroad Retirement Board dated March 18, 2003, that informed Jerry that his monthly Tier I benefits were $1,503 and that his monthly Tier II benefits were $551.50. This letter indicates that Jerry received Tier II benefits prior to the date of the letter. Additionally, Esther testified that she and her attorney had obtained documents from the Railroad Retirement Board and that the documents indicated that Jerry had received Tier II benefits since 1994. Accordingly, the trial court did not abuse its discretion in determining that Jerry had received Tier II benefits. Jerry's second issue is overruled.

In his third issue, Jerry attacks the sufficiency of the evidence supporting the amount of the judgment awarded to Esther. He first argues that a money judgment should not be entered against him because the decree directed the Railroad Retirement Board to pay Esther her share of the Tier II Benefits rather than himself. This argument lacks merit because he received all of the Tier II benefits for several years. The divorce decree specifically provided that Jerry was awarded his Tier II benefits "EXCEPT that portion of such benefits specifically awarded to ESTHER JEAN BIEN as hereinafter described" (emphasis in original).

Jerry also asserts that the amount of the judgment entered against him is incorrect based upon the evidence offered at trial. We agree. Esther sought and obtained a money judgment against Jerry for fifty percent of all Tier II benefits he received from September 1994 until December 2006, in the gross amount of $79,825.73. However, the evidence reflected that the Railroad Retirement Board began paying benefits directly to Esther in April 2006. This factor reduces the gross amount of Tier II benefits paid entirely to Jerry by $4,949.28 ($549.92 x 9 months) to $74,876.45. Additionally, the Railroad Retirement Board did not pay Esther fifty percent of Jerry's Tier II benefits. Instead, the Board paid her approximately 43.28% of Jerry's monthly Tier II benefits upon its receipt of the formula set out in the divorce decree. In this regard, Jerry testified that he began working for the railroad prior to marriage. Accordingly, the evidence only supported an award of $32,406.53 to Esther, which amount equals 43.28% of the

gross amount of Tier II benefits paid entirely to Jerry.  We conclude that the trial court's award of a judgment in excess of this amount constitutes an abuse of discretion.  Accordingly, Jerry's third issue is sustained in part.

*This Court's Ruling*

The judgment of the trial court awarding a money judgment to Esther is reduced to the amount of $32,406.53.  As modified, the judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


April 5, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.