IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| James L. Massey, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20110178-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 19, 2012) |
| Hilary Dalton-Zander, | ) | |
| | ) | 2012 UT App 192 |
| Respondent and Appellant. | ) | |

-----

Fifth District, Cedar City Department, 066500070
The Honorable G. Michael Westfall

Attorneys:     Hilary Dalton-Zander, Craig, Nebraska, Appellant Pro Se

-----

Before Judges McHugh, Orme, and Davis.

ORME, Judge:

¶1     While not apparent from her brief, and Massey did not see fit to file a responsive brief, Dalton-Zander necessarily appeals only from an Order for Sanctions and Judgment entered on January 31, 2011.  Indeed, appeal from any other order would not be timely.  *See* Utah R. App. P. 4(a) (requiring that an appeal must be filed within thirty days from the entry of judgment).  Nonetheless, Dalton-Zander's briefing ignores the sanctions order and instead focuses solely on whether the district court properly assumed subject matter jurisdiction over this case in 2006.  She does not assail the sanctions order on any other grounds.  While she no doubt would hope to do more with

a determination—were we to make one—that the Utah courts lacked subject matter jurisdiction over this case from the beginning, the immediate upshot of our doing so would only be to vacate the sanctions order for lack of subject matter jurisdiction.

¶2     Dalton-Zander and Massey were divorced in Texas in August 2004.  In early 2006, Massey domesticated the Texas divorce decree in Utah's Fifth District Court.  Specifically, Massey filed his Verified Petition to Enforce a Foreign Decree of Divorce, Notice of Entry of Foreign Decree of Divorce, and Thirty (30) Day Summons requiring Dalton-Zander to file a written answer to the Verified Petition to Enforce a Foreign Decree of Divorce, and a Proof of Service of the Summons.  Dalton-Zander, who also lived in Utah at the time, filed an answer and counterclaim in March 2006.  A month later, she filed a request for trial setting, asking that a half-day trial be set.  The district court eventually entered a modified decree of divorce in November 2006.  Now—over five years after the court first entered its modified decree—Dalton-Zander challenges the court's subject matter jurisdiction.

¶3     "Whether a trial court has subject matter jurisdiction presents a question of law which we review under a correction of error standard, giving no particular deference to the trial court's determination."  *Case v. Case*, 2004 UT App 423, ¶ 5, 103 P.3d 171 (citation and internal quotation marks omitted).  The Utah Foreign Judgment Act, *see* Utah Code Ann. §§ 78B-5-301 to -307 (2008),[1] governs the domestication of foreign decrees.  Section 78B-5-303 details the procedural steps for giving notice after filing a decree.  *See id.* § 78B-5-303.  The statute requires that the foreign judgment be entered by a Utah court, that notice be provided to any parties affected by the judgment, and that no execution or enforcement procedures commence until at least thirty days after the judgment has been filed with the Utah court.  *See id.*

¶4     We conclude that the instant proceeding complied with the statutory requirements for the domestication of a foreign decree.  First, Massey filed the Texas decree with the Utah court via his Verified Petition and Notice of Entry of Foreign Judgment.  Second, Massey provided notice to Dalton-Zander at her then-current Utah address, as evidenced by the Proof of Service and her subsequent filing of her answer

---

[1]The Utah Foreign Judgment Act was renumbered in 2008 without substantial amendment.  *See* Utah Code Ann. § 78B-5-301 to -307 amend. notes (2008).

and counterclaims.[2]  Lastly, the divorce decree was not modified by the Utah district court until almost nine months after the Texas divorce decree was filed with the Utah court.  Therefore, the Texas decree was properly domesticated in Utah, and the Utah court properly assumed subject matter jurisdiction.

¶5     Additionally, Dalton-Zander contends that the district court failed to detail the "substantial and material change in circumstances" warranting a modification of the divorce decree, which she contends constitutes reversible error.  *See Taylor v. Elison*, 2011 UT App 272, ¶ 6, 263 P.3d 448 (explaining that the district court must first examine "whether 'there has been a substantial and material change in the circumstances upon which' custody was awarded and 'whether a modification is in the best interests of the child'") (quoting *Hudema v. Carpenter*, 1999 UT App 290, ¶ 22, 989 P.2d 491).  Any potential error in this regard would have constituted procedural error, an abuse of discretion, or a mistake of law, but would not implicate subject matter jurisdiction.  Thus, any such error must have been appealed, if at all, within thirty days of the Utah decree's entry.  *See* Utah R. App. P. 4(a).

¶6     Next, with some trepidation, we address the propriety of the modified decree of divorce entered by the Utah court in November 2006.  We are skeptical about Dalton-Zander's assumption that even if there was subject matter jurisdiction over the domesticated Texas judgment at the outset, there was, nonetheless, no subject matter jurisdiction over the ensuing orders entered in that same proceeding.  Dalton-Zander is correct that "[t]he domestication of a foreign divorce decree in Utah enables Utah courts to enforce, but not modify, a decree."  *Osborne v. Osborne*, 2011 UT App 150, ¶ 3, 260 P.3d 202.  But we believe it is a bit of a misnomer to characterize the decree entered by the Utah court as a "modified divorce decree."  The document admittedly recites that "[t]here exists a sufficient change of circumstance to modify the parties' present decree of divorce[.]"  Despite that recital, however, no real modification seems to be implemented by the "modified divorce decree."  The decree actually appears to be aimed more at *enforcing* the original Texas decree than at modifying it.  In fact, Massey's

---

[2]At that time, Dalton-Zander agreed in her answer that the Utah court had subject matter jurisdiction, stating that "[p]rior to the filing of this action, [Dalton-Zander] had not lived in Iron County for six months.  However, [Dalton-Zander] has lived in Utah for more than six months, and currently lives in Iron County, thus jurisdiction and venue are proper."

pleading was titled Verified Petition to Enforce a Foreign Decree of Divorce, and in it Massey requested that the trial court

> file, domesticate and enforce a foreign Decree of Divorce from the State of Texas, to enforce the provisions thereof or alternatively to modify, amend or change the provisions thereof to conform with the laws of the State of Utah and for this Court's order to show cause to determine why [Dalton-Zander] should not be held in contempt of Court for failure to abide by the terms and provisions of said Decree of Divorce.

The district court's modified divorce decree really seems to have as its goal enforcement of the custody determination made in the Texas decree. Thus, the actions taken by the district court are reminiscent of *Osborne*, in which this court ruled that "the district court's . . . Order merely *enforced* the Decree under Utah Law." *Id*. ¶ 4 (emphasis in original). *See* Utah Code Ann. § 78B-5-307.

¶7    The modified decree ordered that the parties "comply with the visitation guidelines and schedule and related provisions, which apply in the State of Utah, and which are statutorily provided." The Utah court then set forth directives for the parties, none of which appear to be more than an attempt to coordinate the enforcement of the Texas decree in its Utah context. For example, the decree mandates that "visitation shall be through the Family Support Center in Cedar City, Utah" and that "child support is to be collected through the Office of Recovery Services (ORS) of the State of Utah." Additionally, at the conclusion of the modified decree, the court orders that "[a]ll other provisions of the Texas Court Order not specifically modified by this Modified Decree of Divorce are valid and fully enforceable in Utah, as written." And any challenge that Dalton-Zander may have had to the court's failure to detail findings of fact in support of its statement that "[t]here exists a sufficient change of circumstances to modify the parties' present decree of divorce" does not relate to subject matter jurisdiction but to the propriety of the court's disposition. Accordingly, any such challenge had to have been raised years ago in order to be timely.[3] *See* Utah R.

---

[3]As noted, the modified decree appears primarily to be an attempt to enforce the original Texas decree, rather than an outright modification of its terms. Therefore,

(continued...)

App. P. 4(a) (specifying that appeals must be filed within thirty days from the entry of judgment).

¶8     Furthermore, even if we viewed the modified decree as having altered the child custody arrangement of the parties, the decree would not necessarily be improper given the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).  *See* Utah Code Ann. §§ 78B-13-102, -201 to -210 (2008).  The UCCJEA authorizes, inter alia, the modification of child custody orders, in certain circumstances, by states that did not enter the initial decree.  *See id.* § 78B-13-203.  *Cf. Holm v. Smilowitz*, 840 P.2d 157, 164 (Utah Ct. App. 1992) (holding that the Utah district court did not have authority to modify a custody decree under the UCCJA[4] when the original foreign custody order had not yet been domesticated in Utah).  A child custody modification by the Utah court in this case would have properly fallen within the court's jurisdiction because the parents and children no longer resided in Texas and were undisputedly all residents of Utah at the time.  *See* Utah Code Ann. § 78B-13-203 (stating that a court of this state has jurisdiction to modify a custody determination if the state was the home state of the child on the date of the commencement of the proceeding and if a court of this state "determines that neither the child, nor a parent, nor any person acting as a parent presently resides in the other state").  And the district court expressly determined that the parents and children were all residents of Utah before it entered the modified decree.  Therefore, under the UCCJEA, the district court had jurisdiction to modify the custody arrangement of the parties.

¶9     In summary, the Utah district court had subject matter jurisdiction to enter the November 2006 modified decree of divorce.  The court had previously domesticated the Texas divorce decree and the modified decree primarily acted to enforce the intent of the Texas decree.  Even if the modified decree altered the custody arrangement of the

---

[3](...continued)
determining that there was a material change of circumstances, or setting forth findings of fact detailing the substantial change in circumstances, was likely not necessary in any event.

[4]The Uniform Child Custody Jurisdiction Act (UCCJA), Utah Code Ann. §§ 78-45c-1 to -26 (1998), preceded the UCCJEA as the mechanism for coordinating custody determinations among the states that adopt it.  *See In re W.A.*, 2002 UT 127, ¶ 17 n.4, 63 P.3d 607.

parties to some degree, jurisdiction to do so was proper under the UCCJEA. No challenge is made to the sanctions order other than Dalton-Zander's implicit claim that there was no jurisdiction to enter it because there was no subject matter jurisdiction over this case to begin with. And that claim is without merit.

¶10    Affirmed.

_____
Gregory K. Orme, Judge

-----

¶11    WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
James Z. Davis, Judge