**2018 UT App 169**

## THE UTAH COURT OF APPEALS

KATHLEEN O. POTTS,
Appellee,

*v.*

DUANE E. POTTS,
Appellant.

Opinion
No. 20170606-CA
Filed August 30, 2018

Second District Court, Ogden Department
The Honorable Scott M. Hadley
No. 900902738

David Pedrazas, Attorney for Appellant

Emilie A. Bean, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1     This case involves not the benefit of the doubt, but some
doubt as to the benefit. After separating in 1992, the court
entered a decree of divorce based in part on Duane[1] and
Kathleen's stipulation. The decree awarded a portion of each
party's retirement benefits to the other party. The decree
directed the parties to cooperate in obtaining qualified domestic

---

1. "As is our practice in cases where [multiple] parties share a
last name, we refer to the parties by their first name[s] with no
disrespect intended by the apparent informality." *Smith v. Smith*,
2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

relations orders (QDRO)[2] to effectuate the property distribution of the retirement accounts. Kathleen filed the QDRO related to her retirement account in 1995, but Duane waited until 2000 to file his corresponding QDRO. As it turned out, just before Duane filed, the Utah Retirement Systems' rules regarding retirement benefits changed, providing Duane with the advantage of new distribution rules. In 2015, Kathleen filed a motion to amend her 1995 QDRO to reflect the updated rules. Duane objected, but the district court granted the motion. Duane then filed a motion to reconsider, which the court also denied. Duane appeals those rulings. We affirm.

BACKGROUND

¶2 When the parties divorced in November 1992, they both were employees of the State of Utah. Pursuant to the decree of divorce, each party was awarded a *Woodward* share of the other's retirement benefits: 50% of the retirement benefits that accrued during their marriage. *See Woodward v. Woodward*, 656 P.2d 431, 433 (Utah 1982) (holding that pension benefits accrued during the marriage are marital property subject to equitable distribution). The decree directed the parties to cooperate in obtaining QDROs to effectuate the property distribution of the retirement accounts.

¶3 In March 1995, Kathleen filed her proposed qualified domestic relations order (1995 QDRO) for the court's signature and then submitted the signed order to Utah Retirement Systems (URS). The 1995 QDRO ordered URS to divide Kathleen's share of Duane's retirement based upon the rules in existence at that

---

2. A qualified domestic relations order instructs "the trustee of a retirement plan and specifies how distributions should be made, to whom, and when." *Bailey v. Bailey*, 745 P.2d 830, 832 (Utah Ct. App. 1987).

time. Those rules left Kathleen's share of Duane's retirement in Duane's shared-interest account. The 1995 QDRO also provided,

> The [district court] retains jurisdiction to amend this Order so that it will constitute a domestic relations order under the plan even though all other matters incidental to this action or proceeding have been fully and finally adjudicated. If URS determines at any time that changes in the law, the administration of the plan, or any other circumstances make it impossible to calculate the portion of a distribution awarded to alternate payee by this Order and so notifies the parties, either or both parties shall immediately petition the Court for reformation of the Order.

¶4      Sometime in 2000,[3] a URS rule revision occurred which, according to Kathleen, "changed the manner of distribution to more fully reflect Utah law on division of retirement property to what is common[ly] referred to as a separate interest." Under these rules, Duane's account would no longer be a shared-interest account, but instead would be divided into two separate accounts proportional to Kathleen's marital interest. Alteration of the 1995 QDRO would ultimately change the potential payout to the parties, depending upon who predeceases whom. If Kathleen were to predecease Duane under these rules, Kathleen's payout would no longer revert to Duane, essentially divesting him of that benefit.

¶5      In September 2000, Duane filed his own qualified domestic relations order (2000 QDRO). Because he filed after the rule change, Duane received the benefit of the new, separate account distribution rules. Duane's 2000 QDRO had no effect on Kathleen's 1995 QDRO, which was still subject to the old rules.

---

3. Neither party cites any specific URS rule changes, but both parties agree that a rule change did occur "in or about 2000."

In December 2015, Kathleen filed a Motion for an Amended Qualified Domestic Relations Order (Motion to Amend) requesting alteration of the 1995 QDRO "on the ground that the rules for Utah Retirement Systems [had] changed since the entry of the [1995 QDRO]."

¶6    After lengthy objections from Duane, the district court conducted a telephone conference in September 2016 and thereafter granted Kathleen's Motion to Amend, stating, "It seems like the orders were meant to divide each of the [parties'] retirements in the same way." The court held that Kathleen should "be granted the same benefits on the method of division as Duane." That same day, Duane filed a motion to reconsider, but the district court denied the motion. Duane appeals.

ISSUES AND STANDARDS OF REVIEW

¶7    Duane appeals on three bases. First, he argues that the district court lacked jurisdiction to amend the 1995 QDRO. "Whether the district court has jurisdiction is a question of law that we review for correctness, giving no deference to the lower court." *State v. Norris*, 2007 UT 6, ¶ 10, 152 P.3d 293.

¶8    Second, Duane contends that even if the district court had jurisdiction to amend the 1995 QDRO, Utah Code section 68-3-3, which governs the effect of retroactive code provisions, prevents the court from doing so. *See* Utah Code Ann. § 68-3-3 (LexisNexis 2016). "The [district] court's interpretation of a statute is a question of law that we review for correctness." *Cox v. Cox*, 2012 UT App 225, ¶ 10, 285 P.3d 791.

¶9    Third, Duane asserts that it was inequitable for the district court to allow amendment of the 1995 QDRO. A district court's equitable orders are reviewed for abuse of discretion and should be "accorded substantial deference," with the court being given "considerable latitude." *Kidd v. Kidd*, 2014 UT App 26, ¶ 15, 321 P.3d 200 (cleaned up).

ANALYSIS

I. Jurisdiction

¶10 Duane contends that the district court "did not have the jurisdiction and/or the ability to amend" the 1995 QDRO because Kathleen failed to file a petition to modify, which, he alleges, is a requirement to retain jurisdiction. Duane's argument fails for three reasons.

¶11 First, Kathleen did not seek modification of the decree and therefore was not required to file a petition to modify, which must be based on a change in circumstance. *See Durfee v. Durfee*, 796 P.2d 713, 716 (Utah Ct. App. 1990). While Duane is correct in asserting that succeeding on a petition to modify a divorce decree typically depends upon the moving party showing that a substantial material change of circumstances has occurred since the entry of the decree, *Fish v. Fish*, 2016 UT App 125, ¶ 17, 379 P.3d 882, that proposition has no bearing on this case. Here, Kathleen seeks not to modify the decree, but only to alter the 1995 QDRO—an order collateral to the decree. In reality, Kathleen's motion sought to enforce the identical treatment of the parties' retirement accounts as expressly provided for in the decree. Therefore, Duane's contention that the district court lacked jurisdiction due to Kathleen's failure to file a petition to modify is incorrect.

¶12 Second, jurisdiction regarding QDROs has been granted to district courts by statute. Utah Code section 30-3-5(3) governs the disposition of, among other things, property interests such as retirement accounts. The provision states,

> The [district] court has continuing jurisdiction to make subsequent changes or new orders for the custody of the children and their support, maintenance, health, and dental care, and for distribution of the property and obligations for debts as is reasonable and necessary.

Utah Code Ann. § 30-3-5(3) (LexisNexis Supp. 2017). Pursuant to the statute, the award of retirement funds—a property distribution made by the court, *see Woodward v. Woodward*, 656 P.2d 431, 433 (Utah 1982)—is properly subject to the court's continuing jurisdiction, so long as the "subsequent changes or new orders" are "reasonable and necessary," Utah Code Ann. § 30-3-5(3); *see also A.S. v. R.S.*, 2017 UT 77, ¶¶ 2, 4, 416 P.3d 465 (maintaining that "the district court ha[s] continuing jurisdiction over . . . divorce proceedings" and "is able to make changes . . . to ensure the appropriate needs of the . . . parties are met"); *Johnson v. Johnson*, 2014 UT 21, ¶ 31, 330 P.3d 704 (stating that "[d]istrict courts are charged with making an equitable distribution of marital property, including pension benefits"); *Murphy v. Moyle*, 53 P. 1010, 1012 (Utah 1898) ("The court ha[s] the right to enforce the former decrees . . . ."); *Osborne v. Osborne*, 2011 UT App 150, ¶ 4, 260 P.3d 202 (holding that a district court's enforcement of a decree of divorce, by way of entering a QDRO, was correct); *Bayles v. Bayles*, 1999 UT App 128, ¶ 14, 981 P.2d 403 (explaining that "a court has continuing jurisdiction over its decree in a divorce proceeding for the division of property" (cleaned up)). Therefore, having determined that it was reasonable and necessary to effectuate the terms of the decree, the court had jurisdiction to amend the 1995 QDRO.

¶13 Third, Duane fails to recognize that divorce courts are well established as courts of equity, *see Dority v. Dority*, 645 P.2d 56, 58 (Utah 1982), that retain jurisdiction over the parties and subject matter for the purposes equity may demand, *see Salt Lake City v. Ohms*, 881 P.2d 844, 849 (Utah 1994) ("Core judicial powers include the *authority* to hear and determine justiciable controversies as well as the authority to enforce any valid judgment, decree or order." (cleaned up)); *Consolidated Wagon & Machine Co. v. Kay*, 21 P.2d 836, 840 (Utah 1933) (stating that "when a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue."). The court in this instance was exercising its equitable jurisdiction.

¶14 Utah courts have long held that district courts retain jurisdiction to remedy scenarios exactly like the one presented in this case. *See Ohms*, 881 P.2d at 849; *see also Osborne*, 2011 UT App 150, ¶ 4. Here, Kathleen sought the equitable powers of the district court to allow application of the rule change to both parties, and the court properly retained jurisdiction over the parties and subject matter for the purpose of effectuating a fair and equitable division of retirement. To hold otherwise would allow unequal treatment of the parties, which is inconsistent with the decree's award of 50% of each party's retirement benefits to the other party.

¶15 For these reasons, Duane's contention that the district court lacked jurisdiction to amend the 1995 QDRO fails.[4]

## II. Retroactive Rule Changes

¶16 Duane next contends that amending the 1995 QDRO amounts to a retroactive application of law, in violation of Utah Code section 68-3-3, which states, "A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." Utah Code Ann. § 68-3-3 (LexisNexis 2016). However, amendment of the 1995 QDRO has no effect on the application of the law, let alone a retroactive application.

¶17 District courts have the power to enforce a decree of divorce by entering collateral orders—including orders effectuating the allocation of retirement benefits. *See Osborne v. Osborne*, 2011 UT App 150, ¶ 4, 260 P.3d 202 (determining that the district court's order granting the distribution of retirement funds "merely *enforced* the [decree of divorce] under Utah Law," and that "[t]he district court therefore correctly enforced the [decree of divorce] by entering the . . . [o]rder"). In *Osborne*, a

---

4. The parties agree that "neither Rule 59(e) nor 60(b) [of the Utah Rules of Civil Procedure] applies [regarding] the amendment of . . . [Kathleen's] QDRO."

respondent challenged the court's order awarding his former spouse a portion of his retirement, pursuant to a QDRO. *Id.* ¶ 1. There, the court held that the QDRO at issue "merely effectuated the allocation of . . . benefits to [ex-wife] by instructing the Railroad Retirement Board to disburse the funds as the [decree of divorce] allocated them." *Id.* ¶ 4.

¶18 Similarly, in this case, amendment of the 1995 QDRO merely effectuates the allocation of benefits to Kathleen by instructing URS to disburse the funds as the decree allocated in 1992. The decree was established, with regard to each party's share of retirement, in 1992, pursuant to the *Woodward* formula. *See supra* ¶ 2. The proposed amendment does not attempt to change or retroactively apply new law because it does not involve any statutes at all. Duane does not point to a single statute being retroactively applied. The amendment to the 1995 QDRO simply enforces the already-existing decree—which treats the parties identically—and asks the court to identically apply the change in administrative rules to the retirement accounts as well. Kathleen did not seek any alteration of retirement benefits that may have accrued between the entry of the original decree and present-day; she instead requested that moving forward, the court grant her QDRO the same status as Duane's QDRO. Therefore, Duane's argument that the district court retroactively applied a change to the Utah Code fails.

### III. Inequitable Amendment

¶19 Finally, Duane argues that it was inequitable for the court to amend the 1995 QDRO because Duane "stands the chance of losing more." Under the new rules, if the amended order stands and Kathleen predeceases Duane, he would suffer a diminishment in benefits. But Kathleen asserts, "Equity demands that both parties be under the same application of the rules for division of their respective retirement accounts." We do not see the question as whether the equities of the parties' positions should be re-evaluated. Instead, we view this collateral order through the lens of enforcement, specifically enforcing the

equitable distribution of property established by the court many years ago.

¶20   In a stipulated divorce, the point at which the court weighs the equities is when it accepts the parties' stipulation and uses it as the basis for the decree. *See Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987) (stating that in determining marital property distribution, "[t]he overriding consideration is that the ultimate division be equitable—that property be fairly divided between the parties."); *Maxwell v. Maxwell*, 796 P.2d 403, 406 (Utah Ct. App. 1990) ("While a property settlement agreement is not binding upon a [district] court in a divorce action, such agreement should be respected and given considerable weight in the [district] court's determination of an equitable division of property.").

¶21   Where there is no petition for modification of the decree itself, the court does not bear the responsibility of re-weighing the equities for the parties after they have assented to the decree; the court's responsibility is to enforce the provisions of the decree as they exist. *See Bayles v. Bayles*, 1999 UT App 128, ¶ 15, 981 P.2d 403 ("Stipulations entered into in contemplation of a divorce are conclusive and binding on the parties unless, upon timely notice and for good cause shown, relief is granted therefrom." (cleaned up)). Here, by allowing amendment of the 1995 QDRO—a collateral order—to reflect the current rules and apply them identically to the parties, the decree remained unchanged. Accordingly, there is no need for the court to weigh the equities once more. Therefore, the district court properly enforced the decree by allowing the amendment.

CONCLUSION

¶22   The district court properly exercised jurisdiction over the parties and the 1995 QDRO. The district court did not retroactively apply any part of the Utah Code to the 2015 QDRO. And finally, the district court did not need to reassess the equity

arguments of the parties in entering a collateral order enforcing the original decree.

¶23   Affirmed.

———————